[No. 6332.]

# LA SOCIÉTÉ FRANÇAISE D'EPARGNES ET DE PRÉVOYANCE MUTUELLE, Petitioner, v. THE DISTRICT COURT OF THE FIFTEENTH JUDICIAL DISTRICT OF THE STATE OF CALIFORNIA, AND SAMUEL H. DWINELLE, Judge of said Court, Respondent.

CERTIORARI TO REVIEW ORDER MADE BEFORE JUDGMENT.—Under the provisions of the Code of Civil Procedure, (sec. 939) a direct appeal from an order made before judgment appointing a Receiver is not allowed, nor is such an order subject to be reviewed upon an appeal from the final judgment. Such an order, if it is in excess of the jurisdiction of the Court in which it is entered, is therefore subject to review under section 1068 of the Code of Civil Procedure.

RECEIVER FOR CORPORATION—EQUITY JURISDICTION.—The general and ordinary jurisdiction of Courts of Equity does not embrace the power to appoint a Receiver of the property of a corporation in aid of a suit prosecuted against the corporation by a private person, but such power, if it exist at all, must be derived from a statute conferring it upon the Court.

SAME.—Sec. 564 of the Code of Civil Procedure does not confer it.

This was an original proceeding in the Supreme Court to review the action of the Judge of the Fifteenth Judicial District, appointing a Receiver of the effects of the plaintiff corporation, a savings and loan society.

The facts are fully stated by the Chief Justice in delivering the opinion of the Court.

The following opinion of Hon. S. H. Dwinelle, of the District Court, was given upon denying the motion to vacate the order appointing the Receiver, and was read by counsel for the respondent at the hearing in this Court:

"On the 7th day of October last, F. F. Low was by this Court appointed Receiver of the assets of the defendant in the above entitled action. The defendant now moves to vacate and set aside the order appointing the Receiver. The defendant's motion is opposed by the plaintiff and several intervenors who have intervened herein.

"The appointment of Receivers is ·solely and peculiarly of equitable cognizance. The District Courts of this State have original and exclusive jurisdiction in all cases of equity and equity jurisprudence. (Constitution of California, art. 6, sec. 6.) A Receiver cannot lawfully be appointed by any other Court. There are twenty-three District Courts in this State, all of which have the same authority and jurisdiction in equity cognizance, including the appointment of Receivers; the jurisdiction is concurrent. A District Court held in the remotest portion of .the State has equal jurisdiction, in a proper case, to appoint a Receiver, with a District Court held in San Francisco, even though the property to be taken and held by him be located in that city. The Constitution empowered the Legislature to increase by enactment the powers of Courts of Equity, (District Courts) and extend their jurisdiction over subject-matters not theretofore embraced within equitable cognizance. As, for instance, at the time of, and after the amendment of the Constitution in 1863, District Courts had not, under it, nor the laws then and for some time thereafter existing, authority to appoint a Receiver to take charge of and administer the assets of a corporation, as was definitely settled under the laws then in force, by our Supreme Court, in *Neall* v. *Hill*, 16 Cal., in the year 1860. Prior to the adoption of our Code of Civil Procedure, which became operative on the 1st day of January, 1873, the only cases in which Receivers ·could be appointed were desig-

nated in sec. 143 of the Practice Act of 1851, which did not include Receivers of the assets of corporations. In the year 1871-2, the Legislature repealed said sec. 143 of the Practice Act, and adopted sec. 564 of the Code of Procedure, which provides :

"'Section 564.   A Receiver may be appointed by a Court in which an action is pending, or by the Judge thereof.

  *   *   *   *   *   *   *

"' 5. In the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

"' 6. In all other cases where Receivers have been heretofore appointed by the usages of Courts of Equity.' (Code of Civil Procedure, sec. 564, subds. 5, 6.)   And the same Code recognizes the power of the Court or Judge thereof to appoint a Receiver *ex parte*.   (Ibid. sec. 566.)

"In the several other States it has been held that the assets of a corporation cannot be administered by the instrumentality of a Receiver.   Our Codes provide that the word 'person' includes a corporation as well as a natural person. (Ibid. sec. 17.) Hence under the provisions of the Code above cited, the same power is vested in Courts of Equity to appoint a Receiver in a proper case, to take charge of and administer the assets of an artificial person—a corporation—as it had of the assets of a natural person.   The wisdom of this provision in reference to Receivers for corporations and its necessity will be painfully manifest in the developments of the case under consideration. It is broad — necessarily so — in its provision, and radically changes the provisions of the law as to proper restraint upon the action of corporations, their officers and employés.   Perhaps no provision of law has been enacted so salutary as this since the formation of this State, except the act of the last Legislature creating and organizing a Board of Bank Commissioners, whose efficiency, financial ability, and fairness have been so satisfactorily demonstrated in its action in reference to the defendant's bank.   The Board is an absolute necessity in the furtherance of the interests of the people of the State at large, and of incalculable assistance to Judges of Courts of Equity,

who would not, nor could safely appoint Receivers of the assets of banking incorporations until after the action and report of the board. The rule of the Courts of Equity will undoubtedly be not to appoint Receivers of such corporations until the action and report of such Board, so long as it shall exist.

"It is contended that, the orders appointing the Receiver are void, for the reason that they were made before the action was commenced, at a time when no action was pending. The facts relied upon by the defendant were as follows: On the 7th day of October last, a few minutes past eight o'clock in. the morning, the complaint in this action was placed in the hands of a deputy clerk of this Court at the Court-room thereof, and he then and there marked it filed. A few minutes after nine o'clock that morning he actually placed said complaint in the Clerk's office, together with the Receiver's undertaking duly approved. The Judge of this Court, as a matter of fact, made chamber orders appointing the Receiver about nine o'clock the same morning, after the complaint was so marked filed, but before it was actually lodged in the room known as the Clerk's office. An action is commenced by the filing of a complaint with the Clerk of the Court. (Code Civil Procedure, sec. 405.) A Receiver can only be appointed in an action pending. (Ibid. sec. 564.) In October, the office hours of the Clerk of this Court are from nine o'clock in the morning, until four o'clock in the afternoon, except on *dies non*. (Laws 1871-2, pp. 58, 59; Consolidation Act, sec. 8.) The defendant cites the following authorities to maintain that this action was not commenced at the time of the signing of the chamber orders for the appointment of the Receiver. Where the statute provides office hours for the Clerk of a Court, commencing at nine o'clock in the morning, records of judgment filed in the morning before that hour 'will be considered as filed at the hour of nine.' (*Wardell* v. *Mason*, 10 Wend. 575.) 'All judgments filed and docketed by a Clerk out of office hours, although some may be entered before others, must take effect and become liens equally at the next office hour after such docketing.' (*France* v. *Hamilton*, 26 How. Pr. 180.) An order to show cause, granted by a Judge or a Court before an action is commenced, is irregular.

(*Kattenstroth* v. *Astor Bank*, 2 Duer, 362.)    In that case the
complaint had been filed, but no summons had been issued, the
New York Code providing that a civil action should be com-
menced by the 'filing of a complaint and the issuance of a
summons.'    Where the complaint was not filed until two days
after the order of arrest had issued, *held*, that the order of arrest
was void.    (*Ex Parte Cohen*, 10 Cal. 318.)    All of these
decisions are by Courts of Law.    How far they apply to actions
in equity, if at all, or if they once did, and are now obviated so
far as this State is concerned, by sec. 76 of the Code of Civil
Procedure, as amended, which provides that the District Court
'for the entry of orders and judgments is always open,' it is not
necessary to consider here, for the reason that on the morning
of the day the complaint was filed, and after it was filed, at the
opening of the Court at ten o'clock in the forenoon, and after this
action was commenced, in open Court, this Court appointed the
Receiver.    This action of the Court removes all question as to
the want of jurisdiction, for the reason that the action could not
be deemed commenced until nine o'clock in the morning.    If
the action of the Judge of this Court was premature for the
reason suggested, the appointment of the Receiver by the Court
was not.    Therefore the appointment by the Court was regular.

"The defendant alleges that the complaint does not state
facts sufficient to justify the appointment of a Receiver.    The
complaint sets forth that the defendant was and is a corporation
incorporated under the laws of this State for the purpose of
receiving deposits of money, preserving the same from loss, and
finding secure and profitable investment therefor, and that its
principal place of business is in the City and County of San
Francisco.    That the defendant is indebted to the plaintiff in
the sum of ninety-eight thousand seven hundred and fifty dol-
lars, United States gold coin, for legal services rendered be-
tween the first day of June, 1870, and the 5th day of October,
1878, and for money laid out and expended by plaintiff for de-
fendant, payment of which he has demanded.    That the plaint-
iff is a depositor and voting member of said corporation.    That
the defendant is insolvent.    That Robert Watt, James Murphy,
and E. J. Coleman, Bank Commissioners, appointed by the

Governor of this State under and by virtue of an Act of the Legislature of this State, entitled ' An Act creating a Board of Bank Commissioners, and prescribing their duties and powers,' approved March 30th, 1878, have examined the affairs of said corporation, and have reported that said corporation has not sufficient assets to pay its depositors and creditors, and that there is now a large deficiency, and that its liabilities exceed its assets over eight hundred thousand dollars. That by the terms of the by-laws of said corporation every depositor having on deposit fifty dollars for six months is a voting member, and has one vote in the election of the officers who manage its affairs, and upon any business that may come before any meeting of the members thereof; and there is great danger that designing and irresponsible men may obtain control of its affairs, and that its assets may be squandered to such extent that it can pay no part of its liabilities; that said corporation did, on or about the 27th day of January, 1860, adopt certain by-laws, by which, among other things, it is provided that no voluntary liquidation of its affairs can take place unless determined upon by a majority of its members, representing three-fourths of the deposits; that members representing more than one-half of the deposits therein, reside out of the United States, and principally in the Republic of France; that by the injurious action of the late manager of said corporation, the sum of over seven hundred thousand dollars was paid out to depositors after such deficiency of over eight hundred thousand dollars had occurred, to the great detriment of the remaining depositors. That the by-laws of said corporation provide that depositors shall be paid on demand from the first disposable funds, and demands for reimbursement are registered pursuant to their order of presentation. That demands have been registered upon the books of said corporation by members calling for reimbursement exceeding nine hundred thousand dollars, and there is great danger that unless said corporation and its officers are restrained from paying these amounts, and a Receiver appointed, the remaining creditors and depositors will suffer great and irreparable injury. That the depositors who have been paid have been, by reason of such deficiency, greatly overpaid and pre-

ferred, and the registered demands, if paid as the by-laws require, will be preferred and overpaid.

"The simple recital of the above facts should, in my opinion, convince any officer having the power to appoint a Receiver of the immediate necessity of prompt and *ex parte* action; that the five million dollars in money, securities, and lands in the hands of such a management, having the power to dispose of the same to innocent purchasers, should be wrested from it, without a moment's delay, and placed in the hands of a responsible person for the benefit of the beneficiaries.

"But test the plaintiff's complaint by the authority of the Court of Appeals in Chancery in England, and it will be found amply sufficient to sustain the appointment of a Receiver. An action by bill in equity was commenced before the Vice Chancellor by certain plaintiffs on behalf of themselves and all the other members insured in certain societies called 'The General Benefit, Health, and Life Assurance Society,' and 'The City of London Loan Society and Deposit Bank,' and others. 'The bill stated, in substance, that the Assurance Society was established in 1820 for the purpose of insuring lives and granting weekly allowances during sickness; that it had a nominal capital of fifty thousand pounds, in shares of one pound each; that the Loan and Deposit Bank consisted of the same trustees, treasurer, manager, directors, and officers as the insurance society, and was, in fact, a branch of it. That the funds of the societies were carried to the same account at the banker's, and invested in the names of the same trustees; and that the accounts of the one could not be taken without those of the other.

That one of the plaintiffs effected an insurance for four shillings per week, and another plaintiff for three shillings per week, during sickness, and had paid the premiums regularly. That another plaintiff deposited with the Loan Society twenty-six pounds, which was due to him, with interest. That others of the plaintiffs had effected insurances on their lives in the Assurance Society, and had paid their premiums. That another plaintiff was the personal representative of a deceased member, on whose death the sum of twenty-five pounds became due on a policy effected by her. That on application by him

(the last-mentioned plaintiff) to the directors for payment of
the twenty-five pounds, an answer was sent, stating that the
secretary had left the office in considerable embarrassment, and
that an investigation was in progress, the result of which would
be laid before the claimants, and their directions taken as to the
best mode of winding up the society. That the office of the
societies was closed, and the business of the society had ceased
to be carried on; and that the directors had refused to repay
the plaintiffs their deposits or insurance moneys.'

"Among other relief asked for, the prayer of the bill invoked
the appointment of a Receiver to take charge of and administer
the assets of the two societies. The Vice-Chancellor, Sir Rich-
ard Torin Kindersley, refused to appoint a Receiver. (*Evans* v.
*Coventry*, 3 Drewry's Rep. 75.) The case was appealed to the
Court of Appeals in Chancery, and the decision of the Vice-
Chancellor was reversed, and a Receiver was appointed by that
Court, two of the Lord Justices giving separate opinions, from
which I quote the following extracts:

"'The arguments which have been advanced in opposition
to this motion might have had place, or even weight, if the
application were of a different stage of the cause. But this is
not a hearing of the cause. There is no plea; there is no de-
murrer. The application before the Court is simply an inter-
locutory application for an injunction, accompanied by the
appointment of a Receiver, without which the injunction (if
otherwise proper) would be unsafe and perhaps unseasonable.
The application for the appointment of a Receiver is here, in a
sense, included in the injunction sought, as an order for an
injunction is always more or less included in an order for a
Receiver.

"'The application is founded on the common right of per-
sons who are interested in property which is in danger to apply
for its protection. Upon the bill and answer it appears that
the plaintiffs are interested in the funds of that which was an
association, under whatever circumstances of honesty or dis-
honesty constituted or carried on; but the affairs of which
have ceased to be, and probably can never again be, in a state
of activity. It was intimately connected with another society,
or alleged society, of a subsidiary nature.

" ' The defendants are persons, or include persons, who owed
duties to those represented by the plaintiffs, in respect of the
funds of the society, for the purpose of care and protection.
These duties appear to have been abandoned in a manner de-
serving, as it would at present appear, the strongest observation.
This has led to a grievous loss, which has been sustained by
persons of small means and in humble circumstances, who are
ill able to bear it.  These same defendants have now under
their control or in their power a poor remnant of the property
which they have so ill cared for.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

" ' In my judgment, the objections that have been urged
against this application at the existing stage of the cause might
be urged with as much force and as much effect if this were
an application to restrain the felling of timber or the destruc-
tion of a house.  It is a case of waste, partly accomplished and
obviously imminent.  But for the judgment which has been
given, and for which I feel the most unaffected respect, I should
have said, from my experience of the practice of the Court in
Lord Eldon's time, that this was a plain case for that injunction
and that Receiver which I think ought now to be granted.'
(*Evans* v. *Coventry*, 5 De Gex, Macnaghten & Gordon, 911.)

" The complaint in the case in this Court makes a much
stronger case for a Receiver than the bill in the English case
above cited.

" That a case existed for the appointment of a Receiver, as
appears from the affidavit of one of the Bank Commissioners
introduced on the hearing of this motion, there cannot be a ques-
tion ; from which it appears loans were made by the defendant
to its directors in violation of its by-laws and on insufficient se-
curities.  A loan was made to a director on a second mortgage,
the security being insufficient ; the books of the defendant did
not always show who the real debtors were ; that one officer
was a defaulter to the defendant in the sum of three hundred
and sixteen thousand two hundred and eighty-five dollars and
seventy-five cents ; that the same officer withdrew one hundred
and sixty-seven thousand dollars from the defendant's bank, os-
tensibly for the purpose of remitting the same to the creditors of

the defendant residing in France, and appropriated the same to his own use; money of depositors was used to pay dividends; interest was charged up regularly on unproductive property and upon loans on which no interest had been paid for two years.

"And the defendant's president, in an affidavit used on this hearing, swears one loan was made by the defendant for the sum of two hundred and forty-seven thousand dollars, on security estimated to be worth not more than fifty thousand dollars; and that other 'inadequately secured loans amounted, in round figures, to the sum of four hundred and seventy-five thousand dollars, the securities for which were estimated to be worth only three hundred and thirty-seven thousand five hundred dollars.' Of course the application for each loan represented the securities to be amply sufficient for the amount applied for and loaned, and the estimated value in such application was in every instance certified in writing to be correct by two of the defendant's trustees, other than its president and manager.

"And it is also shown that, notwithstanding the above peculations and losses, of which the president and manager must be presumed to have been cognizant, they both, on the 17th day of January, 1878, made a verified statement, by which they swore the entire liabilities of the corporation, including amount of principal and dividends due depositors, amounted to six million six hundred and sixty-nine thousand three hundred and seventy-six dollars and thirty-two cents, and that its assets on hand amounted to the same sum in value. And again, on the 17th day of July last, they made another verified statement that the entire liabilities of the corporation were six million five hundred and forty-six thousand and ninety dollars and thirty-five cents, and that it had assets in value to that amount. Other acts of peculation, fraud, perjury, and bad faith, culminating in losses to the corporation, have been developed in this hearing; but sufficient has been stated to convince any reasonable mind that property estimated to be of the value of five million dollars should be taken from the control of a president and board of trustees who, if not participants, at least passively permitted their depositors to be defrauded, when if they had performed their duty the calamity would not have occurred.

" On behalf of the defendant it is contended that the order appointing a Receiver should be vacated and set aside, for the reason that the allegation of the defendant's insolvency contained in the plaintiff's complaint is denied by its sworn answer. Who swore to that answer?   It was sworn to by Gustave Dussol, the defendant's president and one of the defendant's trustees. Perhaps he swore to its solvency from force of habit.   How many times he swore to its solvency—that it was not insolvent —during the five or more years he occupied the Presidency, we are not advised.   But it appears by the statement of the Bank Commissioners that the robbery of the defendant's treasury was, in the main, committed during his Presidency.   It is certain that in January last, and again as late as July, he swore the defendant was solvent.   It is painfully suggestive to follow the gentleman's sworn statements chronologically as to the solvency and insolvency of the corporation over which he presided. In January last, he swore it was solvent; he swore to the same thing on the 17th day of July last.   From his affidavit on file herein, sworn to on the 10th day of October last, it appears from the facts stated therein the defendant was and had been insolvent for a number of years ; and on the same day he verifies the defendant's answer, in which he denies its insolvency, and also on that day makes another affidavit; in which he swears to his asserted opinion—that so long as the order appointing the Receiver continues in operation, and so long as the Receiver continues to retain the possession, custody, and control of the books, papers, effects, and assets of defendant, it will suffer great loss, damage, and injury in its business and finan- cial affairs, and that ' five hundred thousand dollars will not be more than sufficient to cover the actual loss, damage so done and accruing to defendant.'   These several documents, except the statements of January and July, were sworn to after the report of the Bank Commissioners of October 1st last, in which, after giving a detailed statement of facts con- cerning the financial condition of the defendant corporation, by which it appears the defendant was apparently irretrievably insolvent, they say : ' We do not wish to be understood, however, as stating that the outcome will be so favorable, and as before

stated, the Commissioners are unanimous in recommending that the bank go into liquidation.' And after stating a defalcation of one hundred thousand dollars in May last, and a subsequent one in September, the Commissioners proceed to say: 'There was evidently great want of diligence on the part of the directors of the society, and criminal subserviency or complicity on the part of the employees, which allowed Mr. Mahé, during six years, unchecked, to rob the society as he did; and we think if the corporation continues business, a change of the board of directors and employees is absolutely necessary.' The corporation, (defendant) if for no other reason, on the basis of the defendant's position, became insolvent when it paid out over seven hundred thousand dollars to depositors—the full amount of their deposits—it placed itself beyond the power to reimburse to the remaining depositors their *pro rata* proportion of the excess of the sum so paid out, over and above what the depositors so paid were entitled to, according to the *pro rata* basis provided by its by-laws. The defendant's counsel insists the defendant was not insolvent. A reference to the legal meaning, as given by the law writers, of the words "insolvent" and "insolvency," will be sufficient to establish the defendant insolvent, in the light of the position it now occupies, as developed by its surroundings. "Insolvent—Where a person's debts exceed his estate he is said to be insolvent." (Bell's Law Dic.; Holthouse's Law Dic.) 'Insolvent Debtors—Unable to pay their debts.' (Jacob's Law Dic.) 'Insolvency—The state of one who has not property sufficient for the full payment of his debts.' (Wharton's Law Lexicon.) 'Insolvent—One who cannot or does not pay; one who is unable to pay his debts; one who is not solvent; one who has not present means or property sufficient to pay his debts; one who is unable to pay all his debts from his own means, or whose debts cannot be collected out of his means by legal process; a trader who is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do.' (Burrill's Law Dic.; 4 Hill N. Y. 652.) 'Insolvency—Inability to pay one's debts.' (Brown's Law Dic.) 'Insolvency—The state of a person who is insolvent, or unable from any cause to pay his debts,' (2

Blackstone's Com. 285–471) ' or who is unable to pay his debts as they fall due in the usual course of trade or business.' (2 Kent's Com. 389 ; Bouvier's Law Dic.)

" If the question of solvency or insolvency be involved, the sworn surroundings of the gentleman who verified the answer are such, on this motion, that the Court cannot consider the allegation of insolvency as denied.

" The duties of the Receiver are responsible and important. He is to administer and protect, under the direction of the Court, the interests of the most humble depositor, without regard to position in life or the amount deposited, whether foreign or native born. The most humble foreigner's rights will be cared for and protected equally with the native born citizen. Courts of Equity stand to the beneficiaries of a fund in its administration in the nature of *pater familias*, for their protection. The plaintiff in this action has no more power than any other depositor of the defendant. The plaintiff may fail to recover anything, yet all depositors and beneficiaries will be protected. A creditor or depositor is as much a plaintiff if she or he intervenes in this action as the original plaintiff, Thomas J. Gallagher, and can contest his alleged claims as fully as the defendant can. There is not, in this country, one law for the citizen and another law for the foreigner. The frugal peasant of France, who has never been on American soil, and has sent his earnings to this country for investment, will, by our Courts, be aided in the enforcement of his rights to the same extent as the most favored citizen of the commonwealth. It is the peculiar province of a Court of Equity to protect the rights of all persons who, or whose interests, are brought before it, and it always provides that all necessary safeguards shall be provided and enforced to that end.

" The fact that another action had been commenced by Jean Laju and John M. Cavarly, creditors and depositors of the defendant, against it, in the Fourth Judicial District Court, two days before this action was commenced, in which the appointment of a Receiver is prayed for, is urged as a reason why this Court had not jurisdiction to appoint a Receiver, and that the appointment must be revoked. Several New York cases de-

cide, and two cases in 6 Bissell, 198 and 286, hold, that 'the Court which first takes jurisdiction of the controversy and parties is entitled to retain it to its final termination, and also to take possession of the *res*, subject to the controversy, exclusive of all interference from any Court of concurrent jurisdiction; and that it is not essential that the Court taking jurisdiction of the controversy should also take possession of the *res.*' None of the decisions referred to on that point were made by Courts of last resort, and cannot be considered as authority to a greater extent than that of a Court held by a District Judge. The rule established by the Supreme Court of the United States is directly contrary. I prefer to follow the decisions of that Court, as they appear to be well and carefully reasoned, and seem to arrive at logical results. That Court holds that the Court which first gets possession of the property retains exclusive jurisdiction over it, to the exclusion of all others.

"The Supreme Court of Ohio, after having held the act of that State constitutional which provided for the collection of claims against steamboats and other water craft, and authorizing proceedings against the same by name, the proceeding against the craft by name being *in rem*, no other notice need be given than that arising from its seizure; that Courts of Admiralty and Common Law Courts of the State have concurrent jurisdiction; that in such cases the Court first acquiring jurisdiction by a seizure of the thing in controversy withdraw it from the jurisdiction of the other; and it cannot be taken from the custody of the law by process issuing from any other Court. The Sheriff or other officer having the vessel in custody, under the State law, is under no obligation, has no right, to surrender it to the Marshal under such process, and if he does so, he is liable to the creditor in the State Court. (*Keating* v. *Spink*, 3 Ohio St. 105. See, also, 20 How. 583; *The Ship Robert Fulton*, 1 Paine, 620.)

"In *Taylor* v. *Carryl*, 20 How. 583, the majority of the Court were of the opinion that, according to the course of decision in the case of conflicting authorities, under a State and Federal process, the question as to which authority should for the time prevail did not depend upon the rights of the respect-

ive parties to the property seized, whether the one was paramount to the other, but upon the question which jurisdiction had first attached by the seizure and custody of the property under its process. This principle is fully sustained in a very able decision (written by Judge Nelson) of the Supreme Court of the United States in *Freeman* v. *Howe*, 24 Ibid. 450; *Williams* v. *Benedict*, 8 Ibid. 107. 'Although, by the laws of Alabama, the lien upon property accrues from the delivery of the execution to the Sheriff or Marshal, and the rights of creditors claiming under the same jurisdiction are adjudged accordingly, yet the same rule does not apply when a controversy arises between executions issued by a Court of the United States and a State Court. In such a case the rule is that whichever officer, the Sheriff or the Marshal, acquires possession of the property first, by the levy of the execution, obtains a prior right; and a purchaser at a judicial sale will take the property free from all liens of the same description.' (*Pulliam* v. *Osbourne*, 17 How. 471.)

" ' When real estate is in the custody of a Receiver appointed by a Court of Chancery, a sale of the property under an execution, issued by virtue of a judgment at law, is illegal and void.' (*Wiswell* v. *Sampson*, 14 How. 52.) Judge Conkling, in his valuable treatise on the jurisdiction and practice of the United States Courts, p. 295, etc., asserts the principle that the Court which first gets possession of the property in controversy retains sole and exclusive jurisdiction over it. It is remarkable that in neither of the cases referred to in 6 Bissell, *supra*, any of the cases in the United States Courts are referred to bearing upon this point, though they were both made in a United States District or Circuit Court, which is subservient to that high tribunal.

" Follow the logic of the New York cases and the cases in 6 Bissell to a sequence: if the deceased trustee and manager, Mahé, who is made apparently the scapegoat of all formerly connected with the defendant's bank guilty of peculations, had desired to perpetuate his alleged rascalities to the final absorption of the entire assets of the defendant, he had only to procure to be commenced an action in any one of the twenty-three Dis-

trict Courts of this State, in which a Receiver would be prayed for, and to notify the twenty-two Judges of the other Courts of the fact, and then delay his motion for a Receiver; he could thus paralyze the action of the twenty-two Courts until his object was triumphantly accomplished.

" The position taken by one of the defendant's counsel, ' that this action is essentially a proceeding in insolvency, the jurisdiction over which is conferred by the constitution and the statute upon another tribunal,' cannot be maintained. The counsel relies upon, or at least refers to, ' An Act for the relief of insolvent debtors.'. (Laws 1852.) I do not deem it necessary to follow the argument of counsel, or to ascertain whether this law has been materially changed by the amendments of 1876. (Laws 1875-6, p. 581.) If the argument of counsel is correct, followed to its sequence, the jurisdiction of a Court of Equity would be deprived of all the powers it heretofore possessed, in the matter of injunctions, the enforcement of remedial rights and remedies, and actions of preventive justice: if parties against whom proceedings were desired to be had were insolvent, the only relief in such cases would be to force delinquents into insolvency. The proposition need only to be stated to show its fallacy.

" It is also insisted that the exclusive power to administer the assets of the defendant is vested in the Bank Commissioners or other officers in such manner as the Judge of a proper Court shall direct, in an action to be commenced by the Attorney-General against the defendant, under the provisions of sec. 11 of the " Act creating a Board of Bank Commissioners, and prescribing their duties and powers." (Laws 1877-8, p. 744.) Perhaps it is a sufficient answer to this point that the Attorney-General has not commenced such an action. But the English books contain many authorities to the effect that, although the ' winding up acts,' as they are designated, provide for the administration of the assets of condemned and insolvent corporations by Boards of Commissioners appointed by Courts, yet Courts of Equity still retain jurisdiction to administer them through a Receiver at the suit of a member of such corporation or any person aggrieved. (See Lord Justice Turner's opinion,

*Evans* v. *Coventry*, 5 De Gex, M. & G. p. 920.) By reference to the law of last session, creating a Board of Bank Commissioners, it will be manifest that it does not, as suggested by counsel, repeal sec. 564 of the Code of Civil Procedure.

"It has been thoroughly demonstrated that a Receiver can be appointed to take charge of and administer the estate of an insolvent corporation. But learned counsel say there are two bodies to deal with: First. A corporation; and second, a copartnership with the same corporation managing its affairs; therefore a Receiver cannot be properly appointed. If it is a copartnership we are dealing with, the question is easily disposed of, for Courts of Equity always had power to place the assets of insolvent partnerships into the hands of Receivers. The position of counsel, if correct, justifies the action of the Court in the appointment of the Receiver; therefore it is not necessary to discuss the question of copartnership.

"The by-laws of the defendant provide as follows:

"'Art. 3, sec. 1. Mutuality is the unchangeable basis of the institution.

"'Art. 32, sec. 5. Members participate mutually and proportionately to their respective deposits in the benefits and losses of the society.

"'Art. 75, sec. 9. No liquidation can take place before the expiration of the twentieth year, unless determined upon by a majority of the members representing three-fourths of the deposits.

"'Art. 78, sec. 9. Every member must, by subscribing to the present by-laws, declare that he, without reserve, accepts the same in their entirety, as the rule governing his rights towards the society.'

It is contended the mutuality provision of the by-laws—the provision therein that members shall participate mutually and proportionately in the benefits and the losses, and that no liquidation can be had unless determined by a majority of the members representing three-fourths of the deposits, each member supposed to be bound thereby by signing the by-laws as provided in the above art. 78—prevents the liquidation of the affairs of the corporation until the expiration of the twentieth

year, by Court or otherwise, except as provided in the last mentioned article, and a determination to liquidate not having been had thereunder, the whole proceeding in this Court is void. There is no doubt if all the members signed the by-laws, and the affairs of the corporation had been justly and honestly administered, even though losses to any amount had occurred, each depositor who signed the by-laws, as provided, would be bound by them, and liquidation could not have been enforced until the expiration of the twentieth year, except in the manner provided. But where the funds and assets have been ruinously depleted by the dishonesty of the management, and there is impending danger the remaining assets will be dissipated and lost, the rule is different. In such case, on the application of parties aggrieved, a Court of Equity will intervene by its jurisdiction, and secure to all concerned the residue of the assets. The position is not well taken. (*Evans v. Coventry*, above cited.)

" Several of the depositors of the defendant in this action, representing several thousand dollars, have intervened in this action. They stand on as good footing as depositors as the plaintiff. Even if the plaintiff should undertake to discontinue this action, such discontinuance would only operate as to himself. The action would remain to be prosecuted by the intervenors between themselves and against the defendant to the extent of their respective rights, and in the meantime the Court would protect the rights of creditors and depositors who had not intervened.

" The suggestion made by many of the depositors, supported by the affidavit of several gentlemen of high financial standing in this city, as to the propriety of surrendering the assets in the hands of the Receiver to a new Board of Trustees, to be if not already elected, is worthy of profound consideration. This Court can well appreciate the chagrin and mortification the French residents of this metropolis have been subjected to by the baseness of some of their countrymen in the villainous and unscrupulous management of the defendant's bank and the deposits and earnings of its depositors. The French residents had reason to and did believe that the institution was justly and properly man-

aged.   The bank to them was seemingly of a national French character.   Now, after the realization of the dire results of its management, they exhibit a highly commenable national pride— a pride worthy of the great republic they represent—to in whole or in part obliterate the disgrace shadowed upon them by the villainous action of a few of their people, by placing the management in the proper hands of honest and capable financiers, with the hope—I trust not a vain one—that their countrymen and all others may be wholly reimbursed.   If this Court can legally forward the desires of the French residents in the accomplishment of the rehabilitation of the defendant, it will cheerfully and cordially co-operate with them in the attainment of that end.   It does not now occur to this Court that the assets can be surrendered without the consent of all of the depositors, many of whom—who represent, as the pleadings show, in the aggregate, two millions of dollars of the deposits and unpaid dividends—are residents of the Republic of France, who must be heard in person or by proxy.   However, this is a matter for future consideration, when all shall have been heard, and their willingness and ability to continue the institution safely and successfully shall be made manifest.   When that time shall come, this Court will be open to hear an application for the restoration of the property.

  " From a cursory view of the premises, it is altogether probable a dividend can be declared to the beneficiaries early in the ensuing year ; and from the known character and ability of the Receiver, all must be convinced he will use his endeavors to administer the assets economically and for the best interest of all concerned ; and will no doubt render every assistance within his power, consistent with his position as Receiver, to re-establish the bank upon the basis desired by the French residents.

  " The defendant's motion to vacate and set aside the orders appointing a Receiver is denied.        DWINELLE, Judge."

*Hall McAllister*, for Petitioner.

  1. No such action as this is known to the common law or to chancery.   Part of this complaint is an action at law by the

plaintiff Gallagher, to recover ninety-eight thousand seven hundred and fifty dollars for his services as the attorney for the French Bank, the defendant. The remainder of the complaint aims to be a bill in equity. The bill has neither the form, the shape, nor the substance of any bill heretofore known to equity pleading. In his character as a creditor of this corporation, Mr. Gallagher has not, in an action at law to recover for his services as the attorney of this bank, the right in any category to have a Receiver appointed to take charge of the assets and property of this corporation, that they may be held as security for the payment of his debt. The provisional remedy to which he is entitled, under our Code of Civil Procedure, and the only one to which he is entitled, is a writ of attachment. If that was the whole of this case, an action at law by Gallagher for his fees, in which the Judge of the District Court had granted a Receiver, there would clearly be an excess of jurisdiction by said Judge.

What is the rest of this case, as made by the complaint?

Gallagher, as creditor and as depositor in this French Bank, files this so-called bill in equity to wind up the bank and to put it in charge of a Receiver, because of its alleged insolvency. The Court of Chancery has no power to restrain corporations from violating their charters, and has no power of visitation or superintendency over the conduct of corporations. (*Attorney-General* v. *Utica Insurance Company*, 2 Johns. Ch. 375–7, 385, 389–91.) The doctrines of this last case have been fully approved by the Supreme Court of California. (*Neall* v. *Hill*, 16 Cal. 145–52.)

The equities, so-called, are : (*a*) That the French Bank is insolvent. (*b*) That there is a deficiency of eight hundred thousand dollars, as compared with the total amount due to its depositors. (*c*) That the late manager, Mr. Mahé, after said deficiency had occurred, paid out seven hundred thousand dollars to depositors. (*d*) That nine hundred thousand dollars of demands have been registered, and that there is great danger, unless a Receiver is appointed for the assets of said corporation, that the remaining creditors and depositors will suffer irreparable injury. because of said deficiency of eight hundred thous-

and dollars.   The meaning is obscurely expressed by the complaint, but it may be spelled out to be, that inasmuch as the capital has been impaired to the extent of eight hundred thousand dollars, the nine hundred thousand dollars of registered demands are in danger of attaining a preference over the demands of the other depositors, which are unregistered.   Suppose this were precisely so—is that a sufficient equity to authorize the appointment of a Receiver and the dissolution of this French Bank, in order that the registered depositors should not obtain a preference over those depositors whose claims are unregistered?   I say, the appointment of a Receiver and the dissolution of the bank; for the appointment of any Receiver (especially a Receiver with such powers as the Fifteenth District Court has conferred upon this Receiver) is a virtual dissolution of the corporation.   As this Court said in Neall v. Hill, 16 Cal. 150: "This decree, if permitted to stand, must necessarily result in the dissolution of the corporation."

Plaintiff does not charge in his complaint that such preference of the registered depositors would be in violation of the by-laws.   On the contrary, he avers that such preference would be in accordance with the by-laws; but, in substance, that though in accordance with the by-laws, still it would be unjust to the other depositors, by enabling the registered depositors to obtain a preference in payment over the unregistered depositors. In other words, that the impairment of the capital to the extent of eight hundred thousand dollars rendered the operation of the by-law giving the preference to registered demands unjust, and therefore a Receiver ought to be appointed.

As we understand the rules of equity, if the directors proposed and threatened to pay these registered demands, and give them the preference alleged, in direct violation of the by-laws, this would constitute no ground for the appointment of a Receiver, which is the virtual dissolution of the corporation.   If the directors commit a breach of duty by violating the by-laws, they become personally responsible therefor, and can be personally enjoined.

2. There is a material difference between ordinary trustees and the trustees or directors of a corporation, so far as the

control of equity over them respectively is concerned. In the case of an ordinary trustee, a Court of Equity will interfere to prevent him from committing a breach of trust; require him to account, if he has committed one; will discharge him, and, if necessary, will appoint a new trustee in his place. But not so where the trustees of a corporation are concerned. They cannot be discharged by a Court of Equity. Neither can a Court of Equity appoint new trustees in their places. (*Robertson* v. *Bullions*, 1 Kernan, 250, 251, 252, 253.) The doctrines of this last case are confirmed in *Gram* v. *Prussia Society*, 36 New York, 164. (*a*) If the corporation assumes powers it does not possess, the remedy is at law by a *quo warranto*. (*b*) If found guilty of a usurpation, or unlawfully exercising a franchise, there is judgment of ouster. (*c*) A Court of Chancery under our system has no power of visitation or superintendency over the conduct of corporations, such as was exercised by the Chancellor in England over eleemosynary corporations. (*d*) Directors of a corporation are accountable to a Court of Equity for a fraudulent breach of trust; that is an ordinary ground for equitable jurisdiction; but that does not involve the existence of the corporation. (*Attorney-General* v. *Utica Insurance Co.* 2 Johns. Ch. 389.) (*e*) The complaint of Gallagher does not allege that a majority of the directors are insolvent or destitute of character. (*Verplanck* v. *The Mercantile Insurance Co.* 2 Paige's Ch. 451.) (*f*) The appointment of a Receiver operates as a dissolution of the corporation. (*g*) A Court of Equity can take jurisdiction where parties stand in the relation of trustee and *cestui que trust;* but this is not the relation between the corporation and the stockholders. The corporation is a political body, and each corporator is a constituent part of that body, and therefore the corporation and the stockholders are the same collection of persons. (*Verplanck* v. *Mercantile Insurance Co.* 1 Edw. Ch. 87.) How, then, can the relation of trustee and *cestui que trust* exist between the corporation and the stockholders? Such a relation requires separate and distinct bodies to constitute it. (*h*) The officers of a corporation receive their authority from the sovereignty of a State. Hence a proceeding to forfeit the charter

of a corporation can only be instituted by the government creating it, since that government is the only one that can waive the forfeiture. (Angell & Ames on Corporations, sec. 777 ; *Robertson* v. *Bullions*, 1 Kern. 252.) Private trustees derive their powers from private contract. Corporate officers derive their authority from a source above private contract.

The statute prescribes the qualifications of directors of a corporation, the mode of their election, the tenure of their office. What power has a Court of Equity to set aside the statute, or to impose conditions upon their holding office other than those specified in the statute?

3. Where directors are sued for a fraudulent breach of trust, they certainly must be parties to the suit. The language of Chancellor Kent, in *Attorney-General* v. *Utica Insurance Co.*, is: "Directors of a corporation are accountable to a Court of Equity for a fraudulent breach of trust." No fraudulent breach of trust is charged against the directors in Gallagher's complaint; and the directors are not made parties to the suit. ( *Verplanck* v. *Mercantile Insurance Co.* 1 Edw. Ch. 87, 88.) "Directors become the agents of the corporators, and a relation is created, not between the stockholders and the body corporate, but between the stockholders and those directors who, in their character of trustees, become accountable for any willful dereliction of duty or violation of the trust reposed in them.   *   *   *   This authority, however, should not be exercised unless the directors are parties to the suit, nor without calling upon them individually to answer the complaint. The Court would then deal with them personally." The suit of Gallagher is not a suit to hold the directors of the French Bank for a fraudulent breach of trust. The whole scope of the complaint is that plaintiff is entitled to have a Receiver because the corporation is insolvent. There is a plain distinction between making the directors accountable for a fraudulent breach of trust, and destroying the existence of the corporation. The one is a personal proceeding against the directors : the other attacks the life of the corporation.

We are not here to represent the old board of directors of this bank, nor are we here to justify or palliate the conduct of the late manager, Mr. Mahé ; but we do represent the corpora-

tion and the corporators, and these corporators desire to manage their own property by and through agents of their own selection. It is a monstrous proposition, that because the directors of a corporation have been unfaithful, therefore there must be a sequestration of all the property of the corporation and a destruction of the corporation itself. Jeremy says: "The appointment of a Receiver is an equitable execution." (Jeremy's Equitable Jurisdiction, 249.) The infidelity of some or of all the trustees affords no ground for taking away the rights of the shareholders. (*Belmont* v. *Erie Railway Co.* 52 Barb. 665, 666.)

4. The five hundred and sixty-fourth section of our Code of Civil Procedure is too fragmentary, too defective, too incomplete to create in and of itself a new cause of action.

In New York, ever since 1825, there has existed a statutory proceeding to sequestrate the property of a corporation in case of its insolvency. (3rd Rev. Stats of N. Y. 5th ed. pp. 763, 764, secs. 44–49.) There are three categories under this New York statute in which a Receiver may be appointed for a corporation:

First—Where there is a judgment at law or a decree in equity against any corporation, and an execution has been issued thereon and returned unsatisfied.

Second—Whenever any corporation shall have remained insolvent for one whole year.

These two categories apply to all corporations.

Third—Whenever any banking corporation becomes insolvent.

In these cases, thus provided for, the Attorney-General prosecuting on behalf of the People, or at the instance of any creditor of the corporation, or at the instance of any director or officer, may, according to the provisions of said New York statute, commence an action to have a Receiver appointed for such corporation. With these statutory modes of winding up the affairs of a corporation and appointing a Receiver for its assets, as provided by the New York Revised Statutes, the Code of Civil Procedure of New York was passed in 1848. (3rd Rev. Stats. of N. Y. p. 536.)

The chapter in the California Code of Civil Procedure entitled

"Receivers" is copied nearly *verbatim* from the chapter of the New York Code of Civil Procedure upon the same subject. (California Code of Civil Procedure, sec. 564.)

Here is the very serious mistake made by the California Code Commissioners. They have extracted from the complete New York system a fragment. They have copied the provisions of the New York Code as to Receivers, but they have left out all that portion of the New York statutory law which—

First—Creates the cause of action.

Second—Designates who shall have the right to sue, and,

Third—Provides for Receivers in such cases.

The New York Code of Civil Procedure reads:

" A Receiver may be appointed    *    *    *    in the cases provided in this Code, and by special statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights, etc." (3rd Rev. Stats. of N. Y. p. 536.) The California Code of Civil Procedure omits the words " provided in this Code and by special statutes," and reads: " A Receiver may be appointed    *    *    *    in the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights." (California Code of Civil Procedure, sec. 564.)

The five hundred and sixty-fourth section of the California Code of Civil Procedure does not create and does not assume to create any new right of action. It does not say that a stockholder or creditor can bring suit against a corporation because it is insolvent.

It simply provides that when a case exists—that is a case with proper party plaintiff, one who, under the law, common or statutory, can maintain an action against a corporation because it is insolvent—in such a case, with such a proper party plaintiff, a Receiver may be appointed. But there is no statute in California authorizing a creditor or a stockholder to bring a suit of this kind against a corporation because of its insolvency.

The appointment of a Receiver is a mere ancillary remedy. It is never the main object of the suit. Sec. 564 of the California Code of Civil Procedure merely gives a provisional

remedy. It creates no new right of action. If it is to be construed as creating a new and hitherto unknown right of action, in whom does it vest such new right of action? If the new right of action is created, as no person is named, it would be given to anybody and everybody. A stranger could sue just as well as a creditor or stockholder. If the cause of action is created by sec. 564 then the cause of action is the fact of insolvency. It may be said that to a great extent this construction renders sec. 564 of the Code of Civil Procedure inoperative. If so, that would only be another instance of imperfect and defective legislation.

5. The rules relating to the construction of statutes. (*a*) The intent—the internal sense is to prevail. (Dwarris on Statutes, 352.) This is a rule applicable to statutes, deeds, wills, contracts. Yet each of these is sometimes "void for uncertainty." (Dwarris on Statutes, 353.) (*b*) In the construction of instruments in general, the Courts constantly reject clauses of which they are unable to ascertain the meaning. (Dwarris on Statutes, 534.) (*c*) The rules which apply to the construction of deeds and wills also hold good in the construction of statutes. (Dwarris on Statutes, 556–7.) (*d*) The judgment of a Court in expounding a will or statute is declaratory of what is in the instrument, and not creative. (Dwarris on Statutes, 560, 561.) (*e*) Effect cannot be given to an intention not expressed in the statute. (Dwarris on Statutes, 572–73, 598.) (*f*) The Courts are neither to add to nor diminish the words of a statute. (Dwarris on Statutes, 579, 580, 582.) (*g*) The Courts are not to presume or speculate as to what was the meaning of the Legislature. (Dwarris on Statutes, 584.) (*h*) Public policy is a very unsafe rule for the interpretation of statutes. (Dwarris on Statutes, 597.) (*i*) There is always danger in giving effect to what is called "the equity of the statute." (Dwarris on Statutes, 617.)

*John A. Stanly*, also for Petitioner.

1. No District Court in this State possesses the jurisdiction to dissolve this or any other corporation, or to appoint a Receiver to administer its assets, unless the jurisdiction is conferred

by statute.  No such jurisdiction has been conferred by any statute of this State at the suit of any private person.  In discussing the propositions involved in this point, we start with the recognized doctrine that the State or government under whose authority a corporation is formed only can institute or authorize the institution of proceedings to take that artificial life which it has conferred upon corporations.  Angell & Ames on Corporations, sec. 777, lays down this indisputable rule, as follows: "A cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer.  And the government creating the corporation can alone institute such a proceeding, since it may waive a broken condition of a compact made with it as well as an individual."

This same doctrine was forcibly stated by Chancellor Kent, in *Slee* v. *Bloom*, 5 Johns. Ch. 381, and its correctness cannot be questioned at this day.  Conceding this proposition, the fact that no Court, either of law or equity, possesses any inherent power to dissolve a corporation and appoint a Receiver to administer its assets logically follows.  The appointment of a Receiver with power of administration is a dissolution of the corporation. (*Neall* v. *Hill*, 16 Cal. 150; *Verplanck* v. *Mer. Ins. Co.* 2 Paige, 452; *Bank Coms.* v. *Bank of Buffalo*, 6 Ibid. 503; *Baylis* v. *Orne*, 1 Freem. (Miss.) 172; *Waterby* v. *Merchants' U. Ex. Co.* 50 Barb. 167; *Robertson* v. *Bullion*, 11 N. Y. 252; *French* v. *Gifford*, 30 Iowa, 153–59; *State* v. *Ins. Co.* 8 Humph. 252; *Backus* v. *Baker*, 32 Ill. 101–108; *Bank Coms.* v. *Bank of Buffalo*, 6 Paige, 502; *Howe* v. *Deuel*, 43 Barb. 504; *Belmont* v. *Erie R. R. Co.* 52 Barb. 665; *Fountain* v. *Turnpike Co.* 8 B. Mon. 142; High on Receivers, sec. 287, 288; *Attorney-General* v. *Earl of Clarendon*, 17 Ves. 491; *Slee* v. *Bloom*, 5 Johns. Ch. 379–381; *Van Pelt* v. *U. S. Metallic Spring Co.* 13 Abb. Pr. N. S. 331; *Attorney-General* v. *Bank of Mich.* Har. Mich. 315.)

2. The question then recurs, is there any statute of this State which confers the jurisdiction upon the District Courts of dissolving a corporation and winding up its affairs through the

medium of a Receiver at the suit of a private person? I most confidently maintain the negative of this proposition. If the jurisdiction exists, it is by virtue only of the fifth subdivision of sec. 564 of the Code of Civil Procedure. In order to a proper understanding of this subdivision, it is necessary that it should be read in connection with the entire section.

Does this section confer any jurisdiction upon any Court of a cause of action which it did not before possess?

I confess to a sense of humiliation in being compelled seriously to argue that it does not; but his Honor of the Court below, after admitting fully the position that his Court did not possess the jurisdiction it exercised, unless that jurisdiction was conferred by statute, relies upon the fifth subdivision of this section as giving it the jurisdiction. This compels me to discuss a proposition which to my mind is too plain for argument.

If his Honor of the Court below is right in the construction which he has placed upon this statute, then it is manifest that we have a new class of actions unknown to and unheard of in any other portion of the civilized world. The insolvency of a corporation, or its imminent danger of insolvency, has become a substantive cause of action which may be availed of by any person in the world who may choose to institute an action against any corporation, and allege that it is insolvent, or in imminent danger of insolvency, although the person bringing the action may have no interest, direct or remote, present or contingent, in the corporation which he attacks.

There is no middle ground to which the doctrine of his construction can be limited. If subd. 5 of sec. 564 of the Code of Civil Procedure gives a new jurisdiction which the Courts did not before possess, it necessarily gives that jurisdiction in every case and in all cases where a corporation is alleged to be insolvent, or in imminent danger of insolvency. The section contains no limitation upon the character of the party who may bring the suit, or of his relations to the corporation assailed.

But it may be said that the Court would by construction incorporate a provision in the statute requiring the action to be instituted by some one having an interest in the corporation or its assets. We are then presented with the case where the

Court first construes that insolvency or imminent danger of insolvency is made a new substantive cause of action, and then construes that only certain persons can maintain such an action. The theory of his Honor of the Court below requires too much construction to sustain it.

We are dealing with one of the most sacred rights of the person, whether that person be a natural or an artificial one—his right to the possession, control, and management of his own property; and we are told that there is a certain section of a certain statute of this State—neither section nor statute being devoted to the subject-matter of conferring new jurisdiction upon the Courts—which is susceptible of the construction that Courts may exercise a new jurisdiction, of depriving that person of his constitutional rights over his own estate! If the Legislature had designed to confer this new jurisdiction, would it not have said so in language from which its intent could have been derived without the aid of construction, and that construction necessary to be itself construed?

But even if this Court were disposed to depart from the well-settled rule of interpretation requiring a strict construction to be placed upon every legislative enactment, under the color of which the constitutional rights of the citizen might be invaded, the statute we are now considering is utterly incapable of being construed as conferring jurisdiction upon any Court of any new class of actions.

It is transparently manifest that this section of the Code of Civil Procedure was not designed or intended to confer any specific new jurisdiction—that is, in any new class of cases—upon any Court. Its self-evident purpose and intent was to regulate and prescribe the manner of the exercise by the Courts of a power ancillary and auxiliary to an already acquired and acknowledged jurisdiction. It simply instances when the Courts may appoint a Receiver in an action already pending, of which they have jurisdiction, without the aid of this action.

The instances enumerated by the statute when this auxiliary and ancillary power may be exercised are:

First—In an action by a vendor to vacate a fraudulent purchase of property.

Second—In an action by a creditor to subject any particular property or fund to his claim.

Third—In an action between partners or others jointly owning or interested in any property or fund, where it is shown that the property or fund is in danger of being lost, removed, or materially injured.

Fourth—In actions to foreclose a mortgage, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured.

Fifth—After judgment, to carry the judgment into effect.

Sixth—After judgment, to dispose of the property according to the judgment.

Seventh—To preserve property, the subject-matter of an action, during the pendency of an appeal.

Eighth—In proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.

This analysis of the first four subdivisions of this section shows that the Legislature did not contemplate by their enactment the granting of any new jurisdiction to the Courts. In every instance, the regulation of the use of this extraordinary ancillary remedy has reference to cases of which the Courts had an unquestioned jurisdiction entirely independent of this section.

If the Legislature intended, in the first four subdivisions of this section, only to regulate the use and exercise of this ancillary power, is there any reason to suppose that by the fifth subdivision they intended to depart from this expressed policy of the section, and by that subdivision to grant to the Courts a jurisdiction which they did not before possess? If four-fifths of the section are transparently intended not to confer jurisdiction, but to regulate how and when a power incident to an acquired and existing jurisdiction·may be exercised, is there any possible reason for the deduction that the remaining fifth of the section was designed to go further than the four-fifths, and to give a jurisdiction which did not before exist?

The very title of that title of the Code of Civil Procedure, of which this sec. 564 forms a part, seems to me to be conclusive

of this question.   Sec. 564 is a part of Title 7 of the Code
of Civil Procedure, and it is entitled " Of provisional remedies
in civil actions."   The chapters of this title treat respectively
of arrest and bail, claim and delivery of personal property, in-
junction, attachment, Receivers, and deposit in Court.   Did it
ever enter into the mind of mortal man to suppose that the regu-
lation of any of these subject-matters contained in any·of these
chapters conferred any jurisdiction of any new class of actions·
upon the Courts?   Or, in other words, that by reason of these
regulations the Courts would have any other or further jurisdic-
tion than they would have had if they had never been enacted?
If the first four subdivisions of sec. 564 of the Code of Civil
Procedure are but regulations "·of provisional remedies in civil
actions," of which actions the Courts have already jurisdiction,
there is and can be no reason in the world for construing the
fifth subdivision to be other than a similar regulation.

   This fifth subdivision provides that " a Receiver may be ad-
pointed by the Court in which an action is pending, in the cases
where a corporation has been dissolved, or is insolvent, or in any
imminent danger of insolvency, or has forfeited its corporate
rights."

   We maintain that this subdivision, like all others of the sec-
tion, was intended merely to regulate the exercise of an auxil-
iary power of the Court, to be exercised in a case pending in
Court of which the Court had already jurisdiction.   It neither
in terms nor by implication confers upon the Court jurisdiction
to dissolve a corporation.

   In the first subdivision of this sec. 564, a Receiver is permit-
ted to be appointed in an action by a vendor to vacate a fraudu-
lent purchase of property, in actions by creditors to subject par-
ticular funds to their claims, in actions between partners and
others jointly interested in any property or fund; but in all of
these actions the statute requires that before a Receiver is ap-
pointed it shall be "shown that the property or fund is in dan-
ger of being lost, removed, or materially injured."   The same
requirement is in the next subdivision in relation to actions
between mortgagors and mortgagees.   But when we come to
the fifth subdivision, which it is claimed confers the jurisdiction

to dissolve a corporation and appoint a Receiver of its assets, no such requirement as to the danger to the property is made.

Now, is it conceivable, if the Court please, that the Legislature should so very carefully provide that the classes of actions referred to in the first and second subdivisions of the section, that the party who had possession of the property should not be dispossessed thereof, unless it was shown that the existence or the value of the property was endangered, while in the cases provided for by the fifth subdivision—cases naturally involving property greatly in excess in value of any that were likely to be embraced in the actions referred to in the first and second subdivisions—it designed that corporations might be dispossessed of their property without any pretense of its existence or value being endangered by their continued possession thereof?

In other words, in the classes of actions provided for in the first and second subdivisions of this sec. 564, a Receiver cannot be appointed unless it is shown that the property or fund is in danger of loss or injury, and that the applicant for the appointment of a Receiver has a probable interest in the property; while according to the theory of his Honor of the Court below, the Court has power to appoint a Receiver of the property of a corporation, notwithstanding the applicant for the appointment may have no probable interest in the corporation's property, and the property itself may be perfectly safe in the corporation's possession. In the one class of actions—those in which the possessor's rights are so carefully guarded—the amount in controversy is usually small and insignificant; while in the other class, where the possessor's rights are not protected, the amount in controversy must, in the nature of things, be usually very large and of great importance. Is not this consideration—the fact that subd. 5 does not give the same protection to a corporation's possession of its property that subd. 1 does to that of one joint owner—conclusive of the proposition that the Legislature did not, by subd. 5, intend to confer the jurisdiction which is asserted under it in this case? "But," say the plaintiffs, "these protecting requirements of subd. 1 must be construed to be a part of subd. 5." This makes Construction No. 3, which is essential to give

effect to a legislative enactment, which it is claimed authorizes the Court to dispossess an owner of his property summarily and without due process of law.

It will be borne in mind that a Receiver can only be appointed after an action is pending; logically and of necessity the action so pending must be one of which the Court has jurisdiction. It would be supremely absurd to say that in an action instituted in this Court upon a subject-matter of which the Court could have no jurisdiction, the appointment of a Receiver therein would give the Court jurisdiction thereof. So, by the very terms of the opening paragraph of the section, before the auxiliary power of appointing a Receiver can be exercised, the Court must have jurisdiction of the subject-matter of the action. What is that subject-matter in this case?

This dissolution of a corporation at the suit of a private person, and the administration of its assets by the Court. We have shown that this is a subject-matter over which this Court has no jurisdiction unless it is conferred by statute, and in reply we are met with the proposition that a statute which in terms limits the appointment of a Receiver for a corporation to a period of time after it has been dissolved, confers the jurisdiction to dissolve it.

We admit that the Attorney-General might institute an action in this Court, which, if based upon proper allegations, would give to this Court jurisdiction to dissolve the defendant. This would be such a pending action as is referred to in the opening paragraph of sec. 564 of the Code of Civil Procedure; and if in this action the Court rendered a judgment of dissolution against the defendant, then subd. 5 of that section would authorize the Court to appoint a Receiver of its effects.

I do not lose sight of that portion of subd. 5 of sec. 564 which authorizes the appointment of a Receiver when a corporation is insolvent, or in imminent danger of insolvency. But this authority, like all others granted by the section, is limited by the requirement that it can only be exercised in a pending case of which the Court has jurisdiction. It cannot be construed as granting a jurisdiction which the Court did not before possess. Before it can have any application to a case of this

character, legislative authority must be shown which authorizes this Court to dissolve a corporation at the suit of a private person, and wind up its affairs, upon proving that the corporation is insolvent, or in imminent danger of insolvency. No such statute exists.

In order that there may be no possible mistake upon this proposition, I invite the attention of the Court to sec. 244 of the Code of Civil Procedure of the State of New York, from which sec. 564 of our Code of Civil Procedure is taken.

The fourth subdivision of sec. 244 of the New York Code is the subdivision of that section analogous to subd. 5. of sec. 564 of our Code. This subd. 4 provides that a Receiver may be appointed "in the cases provided in this Code and by special statutes, when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights."

Here express recognition is given to the proposition that something more is necessary in order to warrant the appointment of a Receiver of a corporation's assets than the general delegation of authority to the Courts to make use of this provisional remedy. It can only be availed of in the cases provided for by the Code, or by special statute.

Our codifiers, in their transcription of this provision, in their anxiety for brevity, omitted this recognition; but inasmuch as the language in which the recognition is given is not in any sense affirmative legislation, but a simple reference to an acknowledged rule of existing law, their omission of this recognizing language cannot be construed as a repeal of that existing rule of law.

In other words, at the time of the adoption of the New York Code, the rule of law was well established that no Court could appoint a Receiver of a corporation's assets unless authorized to do so by statute. The framers of their Code of Civil Procedure thought proper in this section to give express recognition to this established rule of law. The same rule of law prevailed in this State (*Neall* v. *Hill*) at the time of the adoption of our Code of Civil Procedure, but our codifiers omitted in this section to give that recognition to this established rule of law, and there-

fore it is contended that the rule of law referred to has been repealed. The proposition is too absurd for argument.

There is another argument which, to my mind, is conclusive of the proposition that subd. 5 of sec. 564 of the Code of Civil Procedure was not intended to grant the jurisdiction which the plaintiffs assert in this case. Here a Receiver is asked for, for the purpose of entirely supplanting the defendant and its officers in the management of its affairs, and for the winding up and settlement of its entire business. It is apparent, from the reading of the whole of sec. 564, that the Receiver, the appointment of whom is authorized by that section, was not intended to be invested with any such power or authority. The instances in which the section authorizes the appointment of a Receiver limit the powers and duties which he is to exercise.

A Receiver appointed in an action by a vendor to vacate a fraudulent purchase of property, or in an action by a creditor to subject specific property to his claim, or in an action by a mortgagee for the foreclosure of a mortgage, is invested with no power of administration. It is the evident purpose of the section to invest Receivers appointed under its provisions only with the power and duty of custodians of the property, the subject-matter of their appointment, and in one or two instances only of the duty of specific application of that property. A Receiver appointed under sec. 564 has only such powers of custody and application as are the necessary incidents of the objects and purposes for which the statute authorizes his appointment, and is possessed of no powers and is invested with no duties of administration. This proposition is made perfectly apparent by the very next section of the Code of Civil Procedure. Sec. 565 provides that: "Upon the dissolution of any corporation the District Court of the county in which the corporation carries on its business or has its principal place of business, on application of any creditor of the corporation or of any stockholder or member thereof, may appoint one or more persons to be Receivers or Trustees of the corporation, to take charge of the estate and effects thereof, and to collect the debts and property due and belonging to the corporation, and to pay the outstanding debts thereof, and to divide the moneys and other

property that shall remain over among the stockholders or members."

If it had been intended by the Legislature to authorize the appointment of a Receiver to administer and wind up the affairs of a corporation under the provisions of subd. 5 of sec. 564, what was the necessity of the adoption of this sec. 565? If that could be done under sec. 564 which is expressly and in terms authorized by sec. 565, then sec. 565 is wholly useless and unnecessary. The familiar rules of construction forbid the adoption of this construction, and require that every part of the statute shall be given effect. Apply this rule to sec. 565, and it must receive the construction that the subject-matter of which it treats is another and different subject-matter from that with which sec. 564 deals; or, in other words, that its subject-matter had not been already provided for by sec. 564.

Sec. 565 specifically provides for the appointment of a Receiver to administer the assets of a corporation, and to wind up its affairs, and sec. 564 does not. Sec. 565 authorizes the appointment of a Receiver only after or upon the dissolution of the corporation. In sec. 565 the Legislature is dealing specifically with the subject of the administration of a corporation's assets, and the winding up of its affairs through the intervention of a Receiver. In sec. 564 it was not dealing with this special subject-matter. This is an action praying a dissolution of a corporation, the appointment of a Receiver to administer its assets and wind up its affairs. Which of these sections is applicable to this action—the one legislating upon the appointment of Receivers in general, or the one relating to the appointment of Receivers in the particular and specified cases of which the case made by this complaint is one? Can there be any two opinions upon this question? Can any sane man suppose for a moment that the general provisions of a statute are to override and supersede those special and particular ones which were enacted with direct and special reference to the very case in hand?

When the Legislature, by the enactment of sec. 565, provides for the appointment of a Receiver to administer a corporation's assets and wind up its affairs, prescribes the powers and duties of a Receiver appointed thereunder, and limits the power of making the appointment to a period subsequent to the dissolu-

tion of the corporation, the enactment must receive the construc-
tion that it prescribes the only case in which a Receiver can be
appointed having these powers and duties.    *Expressio unius
est exclusio alterius.*

This conclusion is rendered irrefutable, if the Court please, by
reference to another portion of our statute law, which is in *pari
materia* with subd. 5 of sec. 554 and sec. 565 of the Code of
Civil Procedure.

I now direct the attention of the Court to the chapter of the
Civil Code of this State which deals with the subject of the
" dissolution of corporations."   This chapter begins with sec.
399, and includes sec. 403.   Not only the doctrine that all stat-
utes *in pari materia* shall be construed as a whole, but the posi-
tive requirement of sec. 4480 of the Political Code demands
that the provisions of this chapter of the Civil Code shall be
consulted in arriving at the proper construction of secs. 564 and
565 of the Code of Civil Procedure.

Sec. 399 of the Civil Code prescribes when and at whose suit
a corporation may be dissolved, and points out specifically the
proceedings to accomplish that end ; and secs. 400 and 403 pre-
scribe who shall administer the assets of the corporation when
dissolved.   They are thus *in pari materia* with subd. 5 of sec.
564 of the Code of Civil Procedure in the two aspects of the
power of a Court to dissolve a corporation and to administer its
assets.   The first subdivision of sec. 399 of the Civil Code pre-
scribes how and the reasons for which a corporation may be
dissolved against its consent.   These reasons, and the mode and
manner of accomplishing the result, are found in the Code of
Civil Procedure, from secs. 802 to 810, inclusive.   By reference
to the provisions of these sections, it will be apparent, first, that
no one can institute the action which is to result in the dissolu-
tion of the corporation except the Attorney-General; and sec-
ondly, that insolvency or imminent danger of insolvency are not
prescribed as the causes for which such an action could be
maintained, if instituted by the Attorney-General.   This first
subdivision of sec. 399 of the Civil Code forms a part of a
chapter of the Codes which deals with the particular special
subject-matter of the involuntary dissolution of corporations,
and it does not prescribe, either directly or by inference, insol-

vency or danger of insolvency as a cause of action for the dissolution of a corporation.

If I am correct in the position which I have tried to maintain—that a statute prescribing when a provisional remedy may be availed of necessarily presupposes that the Court granting the provisional remedy has jurisdiction of the action in which the remedy is granted—then the jurisdiction of the Court below in this case, being one for the dissolution of a corporation, must be derived, if at all, from this first subdivision of sec. 399 of the Civil Code. I think that I have shown that that statute does not confer the jurisdiction which has been assumed by the Court below.

If by any possible mode of reasoning it can be held that the regulation by the Legislature of the use of a provisional remedy can give the Court jurisdiction of an action simply for the reason that the ultimate object of the action is the attainment of a result of which the provisional remedy is a necessary or usual ingredient, then I respectfully maintain that that section of the Code of Civil Procedure relating to this provisional remedy must be construed in pari materia with subd. 1 of sec. 399 of the Civil Code.

The Court below held (and the same position must be asserted here) that subd. 5 of sec. 564 of the Code of Civil Procedure gave that Court jurisdiction of an action to dissolve a corporation and administer its assets, upon the allegation that it was insolvent or in imminent danger of insolvency. I say that this section does not form a part of any statute of this State devoted to the question of either dissolving a corporation or administering its assets after dissolution; that there is a statute which is devoted to this particular subject-matter, and that this last statute does not permit a corporation to be dissolved for these reasons; nor does it permit the Court upon such allegations to administer the corporation's assets. I say that upon principle, reason, and authority the statute particularly devoted to the subject-matter shall govern and control the question, and as I understand sec. 4481 of the Political Code, the rule of construction for which I contend is commanded by statute.

And this same chapter of the Civil Code, devoted to the dis-

solution of corporations, also makes provision for the adminis-
tration of the corporation's assets after dissolution.

Sec. 400 permits the Court to appoint some other person or
persons than its directors or managers to wind up its affairs.
But this permission is qualified and limited by sec. 403, which
provides that if any special provision is made in regard to the
administration of any particular corporation or class of corpo-
rations' assets after dissolution, that then and in that case the
special provision shall prevail.   It appears in this case that the
corporation whose interests are here involved was formed under
the provisions of " An Act to provide for the formation of cor-
porations for certain purposes," approved April 14th, 1853.
(Stats. 1853, pp. 87–92.)   Now, by the twenty-third section of
this act, express and special provision is made that upon the
dissolution of any corporation formed thereunder, its affairs
shall be administered and wound up by those persons who are
trustees of the corporation at the time of its dissolution.

3. Can an order made by a District Court appointing a Re-
ceiver of a corporation's assets be reviewed by the Supreme
Court on *certiorari*, after the District Court has refused to
vacate its order, and before the final adjudication of the suit in
which the Receiver was appointed?   I maintain the affirmative
of this proposition.   Sec. 1068 of the Code of Civil Procedure
provides that the writ of review may issue " when an inferior
tribunal     *     *     *     has exceeded the jurisdiction of such trib-
unal,  *     *     *     and there is no appeal nor     *     *     *     any plain,
speedy, and adequate remedy."

The use of the adverb of time " when " in sec. 1068 would
seem to indicate that the right to the writ of review in point of
time was whenever or as soon as the Inferior Court made an
adjudication upon any question in excess of " the jurisdiction of
such tribunal."   Sec. 1068 contains no warrant in support of
the idea that the writ of review can only issue after the final
determination of all matters involved in the suit in which an
order may be made which is in excess of the jurisdiction of the
Court making the order.   To the contrary, the section seems to
imply that the writ may be availed of whenever the Court in
any action has made any adjudication which by law it has no
power to make.   I think there could be no doubt of this last

proposition, but for a misconstruction which has been placed upon certain decisions of this Court.

In *People* v. *County Judge*, 40 Cal. 480, the County Judge had made an order designating a certain day for the hearing of an application for fixing the compensation of certain commissioners. At this stage of the proceeding a writ of *certiorari* was issued to the County Judge. This Court held that the writ was premature, upon the ground that the inferior tribunal had not exceeded its jurisdiction, but only threatened to do so.

In the case of *Templeton* v. *The Twelfth District Court*, 47 Cal. 70, this Court entertained a writ of *certiorari* to review an order made by the Court below, setting aside an order theretofore made by the Court, allowing Templeton to enter into the possession of certain lands pending an eminent domain proceeding; neither the order permitting Templeton to enter into possession nor the order vacating that order were final determinations in the sense of being a part of the final adjudication in the eminent domain proceeding in which they were made. But they were final determinations in the sense in which that term was used by the Court in *People* v. *County Judge*. And in the case of the *Cal. Pac. R. R. Co.* v. *The Cent. Pac. R. R. Co.* 47 Cal. 530, this Court issued its writ of *certiorari* to review an order of the Court below authorizing the California Pacific to enter into the possession of certain lands, upon its giving a certain bond, as provided by statute, pending certain eminent domain proceedings, and prior to the final determination of those proceedings. And upon the hearing of this writ of *certiorari*, the Court set aside the order of the Court below as having been made without jurisdiction. ( *Vide*, also, *Sanborn* v. *Belden*, 51 Cal. 266 ; *Adams* v. *Haskell*, 6 Cal. 316; *People* v. *O'Niel*, 47 Cal. 110; *Batchelder* v. *Moore*, 42 Cal. 413.) These cases recognize the principle, which is undoubtedly the correct one, that whenever the order sought to be reviewed is a final determination of the question involved in that order, and there is no appeal from that order, that it presents a proper case for review by *certiorari*, although the entire controversy has not been determined.

The order appointing the Receiver in this case is a final de-

termination within the meaning of the statute and the authorities. An inspection of the orders shows this fact: they not only dispossess the corporation of its property, but they invest a stranger with the right to consume it with expenses. That such an order is a final order was determined by the Supreme Court of Michigan in *Barry* v. *Briggs*, 22 Mich. 204.

In the case of *Ruthrauff* v. *Kresz*, 13 Cal. 639, this Court, upon *certiorari*, reversed an order appointing a Receiver.

Having established the proposition that the order appointing the Receiver is such a final determination as may be reviewed by *certiorari*, the only remaining question is: Is there any appeal from such an order?

An appeal to this Court is a procedure regulated by statute, and the statute also enumerates the subjects of appeal. (*Blum* v. *Brownstone*, 50 Cal. 294.) Secs. 929 and 963 of the Code of Civil Procedure enumerate the cases in which an appeal may be taken from a District Court to this Court, and in neither of them is an order appointing a Receiver mentioned.

It is true that three cases appear in the reports of the decisions of this Court, in which appeals have been entertained from orders appointing or vacating the appointment of Receivers; but a very slight examination will show that these cases would not sustain a right of appeal in the present case.

*Delos Lake* and *Geo. R. B. Hayes*, also for Petitioner.

*J. P. Hoge*, for Respondent.

This Court is a Court of Errors, ordinarily. It is the appellate tribunal of this State. Its powers, under the Constitution and laws, are mostly appellate. There are some things in which, under the Constitution, it has original jurisdiction. It has the power, in the exercise of original jurisdiction, to issue certain writs under certain circumstances, intended to keep what are styled "inferior tribunals" within the constitutional limits of their powers. The views that such a Court takes of cases, in the exercise of that original jurisdiction, are very different from those it entertains when sitting in the exercise of its appellate

power. It is very hard to apply under our system, to the District Courts of this State, the terms which originally were ordinarily applied by the English Courts and under the English system—when they were intended to control the powers of the Courts below, by virtue of their supervisory jurisdiction over all inferior tribunals. I do not think this Court occupies the position that the Court of King's Bench occupied under the English system—having the power by its writs to control entirely all inferior tribunals in England, and to confine them within the limits of their prescribed jurisdiction. I am not aware that the Court of King's Bench ever issued a writ of *certiorari* to a Court of Common Pleas — a Court of equal co-ordinate jurisdiction. I do not think that in any sense the superior tribunals of Westminster were considered inferior Courts, and within the mandatory control of the Court of King's Bench. This Court has the general power, under the Constitution, to issue writs of prohibition and writs of *certiorari*. The Constitution does not undertake to define the cases in which this Court will issue those writs, nor the tribunals to which they will issue. And the statute law is equally indeterminate, except that it says these writs will go to the inferior tribunals and boards or officers.

It is not necessary for me to undertake to assume or to maintain the proposition that a writ of *certiorari* could not issue from this Court to a District Court. But I refer to this more upon the idea that it must be a very plain case—a case without question or doubt—which would call upon this Court to issue these writs to restrain a Court of general jurisdiction, to restrain a Court exercising entire equity powers, that exist under the Constitution and under the law. I say that this Court will hesitate to issue those writs when the District Courts, in the exercise of their equity jurisdiction, accorded to them by the Constitution, have entertained the proceedings in the case. This Court will be reluctant to issue its writ of *certiorari* without a plain proceeding before it, authorizing or requiring such issue. The issuance of such writs goes upon the ground that this Court has general and universal jurisdiction for the control of all interests of property in the State, and that the District Court has exceeded its

powers—if that be the Court to which the writ is directed.   In no sense can the Constitution or the laws be interpreted to give this Court any control over the proceedings in the District Court in a case where that Court has jurisdiction, except upon the extraordinary occasions which I have indicated.   Considerations which are applicable to these proceedings as against a board, or an officer, or a Court of limited, special, small jurisdiction, are not applicable here when the question involves the powers of a Court of general jurisdiction in all the District Courts in this State.

What is the nature of this proceeding?   It is an application for a writ of *certiorari*, directed to the District Court of the Fifteenth Judicial District, and to the Judge thereof, commanding him to send up his record for the purpose of ascertaining whether he has not exceeded his jurisdiction in the controversy before him.   This Court, in the exercise of its original jurisdiction, has no power whatever to postpone the hearing, or to inquire into the merits of the controversy in the Court below.

Nor has this Court the power in this way to inquire into the sufficiency of the facts upon which the Court below founded its action; nor to inquire into any supposed mistakes of law or mistakes of fact which the Court below may have possibly fallen into in the course of its consideration of the case before it.   It matters not however erroneous or however mistaken the views of the Court below upon a question of law, or upon the facts presented before it—those mistakes cannot be reviewed in this form of proceeding.   You cannot turn a writ of *certiorari* into a writ of error, and thus review and consider the errors of law which may have been committed, or the errors of fact which might appear in the Court below in a bill of exceptions.   Nor can you consider on such a writ the sufficiency of any proposition made in the Court below which brought that Court into action, and induced it to come to a determination.   There is but one question involved in a proceeding of this character; and that is, had the Court below power in a particular case?   The power to do what?   To hear and determine upon the facts and matters presented before it.   This is what I understand to be jurisdiction; and all else is the mere exercise of jurisdiction.

The exercise of jurisdiction can never be controlled in this tribunal by a writ of *certiorari*. In order to give this Court the right to determine the question legitimately involved here, the Court below must have assumed a jurisdiction which the law did not give it; and it is this, and this alone, that a writ of *certiorari* is intended to prevent. What the Court does, if it has the jurisdiction to inquire and determine at all, is a matter entirely aside from this question. And this Court went so far in the case of *The People* v. *Barney*, 29 Cal. 460, as to say that that was a case entirely within the power of the Court below, although the law gave no appeal; and so the decision and action of the Court below was maintained. Under no circumstances can the review be extended to the merits. This I understand to be the doctrine of the reported decisions of this tribunal.

In a recent case decided by this Court, (*Spring Valley Water Works* v. *Bryant*, 52 Cal. 132) this Court held that, in order to authorize a writ of *certiorari*, the inferior Court must have entered a judgment beyond the jurisdiction conferred upon it by law. That is, that the Court must have assumed a jurisdiction which it had not—assumed the right to hear and determine a particular matter brought before it, which the law did not give power to the Court to hear and determine.

The same doctrine was early advanced in the decision of this Court in the case of *Whitney* v. *The Board of Delegates of the San Francisco Fire Department*, 14 Cal. 500, and I understand it to be the well-settled doctrine of this Court. Under no circumstances can the review be extended to the merits. The nature and provisions of this writ are settled by a long line of decisions, from the early days—from the very earliest day of our jurisprudence—down to the present time. (*People* v. *Barney*, 29 Cal. 460; *People* v. *Elkins*, 37 Cal. 457; *Coulter* v. *Stuart*, 7 Cal. 345; *Clary* v. *Hoagland*, 13 Cal. 173; *People* v. *Shepard*, 28 Cal. 115; *Winter* v. *Fitzpatrick*, 35 Cal. 269; *People* v. *County Judge*, 40 Cal. 480; *Barber* v. *San Francisco*, 42 Cal. 634; *Bennett* v. *Wallace*, 43 Cal. 26; *Spring Valley Water Works* v. *Bryant*, 52 Cal. 132; *Miliken* v. *Huber*, 21 Cal. 166; *Yenawine* v. *Richter*, 43 Cal. 312; *C. P. R. R.* v. *Placer Co.* 43 Cal. 366; *Same* v. *Same*, 46 Cal. 671; *Petty*

v. *County Court San Joaquin County*, 45 Cal. 246 ; *Montreal*
v. *Bush*, 46 Cal. 79; *Whitney* v. *Board of Delegates*, 14 Cal.
500.)

This proposition is very certain : that any order appointing a
Receiver in this case, or any order refusing to vacate the ap-
pointment on motion, may be reviewed on appeal from the
judgment. I do not think there is any question on that propo-
sition. The only question involved here would be, whether that
would bring the case within the provision of the statute—that
there can be no writ of *certiorari* where there is an appeal or
any other remedy known to the law ; and on that proposition
the argument might be very securely advanced—and, as far as
I am concerned, my own opinion runs conclusively in that direc-
tion—that inasmuch as these orders may be reviewed on an
appeal from the judgment, that that is a plain, speedy, and ade-
quate remedy, given by the law, which comes under the right
to resort to the extraordinary process of *certiorari*. As your
Honors said in one of the cases I have cited, you might be
called upon to interfere by a writ of *certiorari* or by a writ of
prohibition at every step in the case pending in the Court
below, if another doctrine was adopted, if another purpose was
sanctioned. After you had settled one writ, another might be
made, and the same proceeding resorted to again, the same pro-
cess invoked to stop the machinery of law and justice in the
Court below ; and so you might be required to practically with-
draw the consideration of the case in all its forms from the
Court below at any step in its progress, by the invocation of
this extraordinary power.

Now, the District Court is a Court of general jurisdiction in
the administration of justice in a case over which it has juris-
diction. I think myself that there was a remedy by appeal in
this case from the order appointing the Receiver, or the refusal
of the motion to set aside the appointment already made.
Everywhere else, as far as I have examined, an appeal is made
directly. Whether provided for by the statute or not, I cannot
say in every instance ; but they go directly on appeal to these
very orders, and the Court, in the exercise of its appellate ju-
risdiction, reviews these orders, and reverses the Court below for
its error in issuing an order in any case improvidently.

Certainly it is not the intention of this law, which expressly provides that there shall be no such writ in the case where there may be an appeal, or any other remedy known to the law, to provide for any interference during the progress of a case which is being tried before a Court of competent jurisdiction. That would be to turn these proceedings into a writ of error, and to do away with the necessity of an appeal altogether..

I say, emphatically, there can be no writ of *certiorari* against a Court of general jurisdiction, to prohibit the issuing or the execution of any order which it thinks proper to make, where that order can be reviewed on appeal from the judgment. '

Here is but an intermediate order, made in a case now pending—a mere order for the preservation of the property in controversy, pending litigation, upon the ground that it is insecure in the possession of the defendant, alleged to be insolvent. Here its officers are shown to have been delinquent, and to have suffered its employees or managers to misappropriate its funds to a large amount. There is no final determination of anything in an order of that sort. No rights of parties are sacrificed. It is a step in the case.

Your Honors have held that a writ of *certiorari* is a writ of review. Its office is to bring up for review final determinations and adjudications of inferior tribunals, or boards, or officers, exercising judicial functions, when no appeal, nor any other plain, speedy, or adequate remedy is to be had. The writ is necessarily founded on final determination.

This order appointing a Receiver is in the nature of an interlocutory order, and may undoubtedly be reviewed on an appeal after final judgment, which affords a plain, speedy, and adequate remedy according to law. I rely upon the proposition— that if for no cause whatever, if under no circumstances, the District Court has the power to order the appointment of a Receiver for a corporation, this Court cannot by *certiorari* control the exercise of that power, nor review in such a proceeding or on such a writ any errors of law or of fact in the Court below. The only question for this Court to consider is a question of power. If the jurisdiction exists at all, if the power is present in the Court below, under no circumstances can this

writ lie.   Counsel for the petitioner so far lost sight of settled doctrines as to enter into an argument to show that the allegations of the complaint were insufficient to sustain the application for a Receiver.   Surely the learned counsel knows very well that this Court cannot, in this proceeding, review the insufficiency of allegations in a complaint to sustain the action or the decree of the Court below.   This would be at once to convert this proceeding, which is aimed at the jurisdiction of the Court below, into a writ of error, to review its action under its jurisdiction.

2. The true question, then, is, can a Court of Equity in this State, or in any case, appoint a Receiver of a corporation? And upon the solution of that question depends the entire controversy, in my judgment.   Here are secs. 564–566 of the Code of Civil Procedure.   It is admitted that the Attorney-General may bring a suit for the People, asking the appointment of a Receiver for a corporation; but it is said an individual cannot do so.   I contend that any party interested may maintain such a suit.   These sections that I have cited are portions of the Code which regulate the administration of the law, and which prescribe the remedies.   They regulate the forms and modes in which the Courts will administer relief to a suitor.   The various provisions of the Code from beginning to end altogether make a system of practice by which the parties and the Courts are regulated and governed.   I believe that in no case, throughout the whole course of this Civil Practice Code, does the law go into minutiæ, and prescribe specifically who shall be parties in a suit or who shall be defendants in a suit.   The manner and provisions are general, and they apply to all proceedings.

The parties to a suit to enforce a claim by the General Law are, of course, the proper parties, and the persons or parties who are responsible to that claim are, of course, the proper defendants.   A party plaintiff complains and presents his case.   A party defendant answers and presents his defense.   The whole progress and system of the allegations are prescribed in the various sections of this Code, and the various remedies are prescribed, many of which are styled provisional.   Attachments, replevins, injunctions, Receivers, and other provisional remedies

are provided for in the Code, and the whole process of proceedings and remedies by appeal are prescribed and provided for. The District Courts hold their power over equity matters and over law matters under the Constitution. The Code only prescribes the mode of procedure and furnishes the machinery, so to speak. It prescribes the mode by which the Court, in the exercise of its acknowledged equity or legal powers, will pursue certain forms in the administration of affairs. The General Law says who is to sue, who is to defend, prescribes rights, and gives remedies. The Code gives the form of proceedings, and also gives special remedies where it is indicated that any special remedies are to be applied. I say that the objections taken by counsel—that these provisions here form no system; that they are a mere interjection of parts of some other Code, the New York Code, for instance—are utterly unfounded. Such objections apply with the same force, and no more, to any other provisional remedy, or to any other proceeding authorized by the Code, in pursuance of the jurisdiction of a Court of Equity.

I supposed that it would not be disputed that a Court of Equity has jurisdiction over a corporation in many other respects, for many other purposes. That is too clear for controversy. That a District Court will entertain a bill against a corporation for relief, and at the suit of a stockholder or creditor, under certain circumstances, is a proposition which cannot be disputed. The District Courts have certain general control over corporations, as they have over all other suitors in the administration of the rules of equity, in the administration of equity jurisprudence.

It was perfectly competent for the legislative power, in prescribing the mode and manner in which the equity jurisprudence of these tribunals should be exercised, to give any remedy for the administration of that power which did not regard the system, or which the theory or the decision of the Courts of Chancery had determined not to enter into the nature of these tribunals, or to belong to a Court of Equity. The Legislature clearly had that power.

Now, our whole legislation, for years, tends to bring corporations to the same level, and to the same responsibility, and sub-

ject to the same remedies as individuals. That is the course of the legislation in this State, and in all the States. And it is the course of the legislation and of decisions by the supreme authorities and tribunals of the United States. The progress of the law is forward in this regard, and not backward. Almost all the States have provided by law for the administration in the ordinary exercise of the powers of equity of law or laws to control corporations.

This whole doctrine, upon which rests the idea that a Court of Chancery is to be stopped at the threshold when a corporation is involved in a suit brought before it, is a lineal descendant of the *Case of Dartmouth College.* There the Supreme Court of the United States arrested the power of the sovereign State to control these corporations, upon the ground that they were contracts irrepealable under the Constitution of the United States. This is the foundation of the whole doctrine. Now, what did that rest upon? These corporations then were created by the special acts of the Legislature, with certain powers for a given time. They were established under the laws and the Constitution of the United States. They were surrounded and protected by the Constitution upon the ground of contract, and therefore no Court of Equity could interfere with them, or control them, or dissolve them, and no one could do it but the State. In the exercise of its sovereign powers, and upon good cause to the Court shown, the State could interfere and dissolve them. But they were withdrawn from the reach of the arm of a Court of Equity, except in particular cases and for particular purposes. But that doctrine has seen its last day; it is no longer the law that a·corporation, the creature of legislative power, is beyond the reach of the Courts of the country, or ordinary administration of law.

From the earliest day in the history of our jurisprudence, our Courts have more and more assimilated what were called corporations with copartnerships, and with joint-stock associations, having the same privileges as corporations, and in the main holding the same position, exhibiting the same character, and possessing the same rights of controversy. In an able opinion, delivered by Judge BALDWIN of this Court, at an early day,

this idea was maintained with great force. He held that these corporations were mere associations of wealth, formed under a general law, which pertains to the character, power, and privileges of corporations. That the law does little more than allow them to incorporate—strictly so-called—so as to have succession, and to continue for a given number of years. In all other respects they partake of the character of copartnerships, or joint-stock associations.

It is very clear that the Legislature intended by these provisions to place corporations on the same plane with individual suitors in the Courts, and to subject them to the same remedies under the jurisdiction of Courts of Equity, to the same extent as private suitors in Courts.

Not only have they done it in this instance, where there are prescribed remedies to suitors in Courts of Equity, but they have in half a dozen different ways provided that these corporations may be reached by the arm of the law, and that all the remedies for the protection of parties shall be extended to them, in some form or other, either by proceeding under one law or another, that they may be reached and controlled in the exercise of the equitable jurisdiction of the State tribunals. It is the policy that prevails, not only here, but everywhere, that there shall be no body superior to the Courts of the country in the ordinary application of remedies provided by law for the protection of private rights and the advancement of public interest. To hold otherwise is to strike these sections bodily from the Practice Code. It is to bar the Courts of Equity from all remedial jurisdiction in one class of cases, which are most important, as exercised in vindication of private rights and against the association of wealth and the assaults of fraud and wrong of every form incident to corporate management.

We have thousands of corporations in this State formed under our General Laws. If the doctrine of the other side is to prevail, all these immense interests are to be withdrawn from the operation of ordinary rules of equity jurisprudence, and are to stand beyond the reach of the equitable arm of the Courts in any controversy where the private individual has rights adverse to these associated bodies.

3. We are met by another proposition. We are told that these proceedings appointing a Receiver will dissolve the corporation, and it is said that the Court cannot do indirectly what it cannot do directly. This is not so clear a proposition as is claimed under the present state of the law—as to the power of a Court of Equity, under proper circumstances, to dissolve a corporation, or to do what is equivalent to it. It is not necessary to contend to the contrary at present.

The proceeding to dissolve a corporation, and the proceeding to protect a stockholder or creditor, and to take his property and put it in the hands of a Receiver, are distinct and independent remedies. The case of *Miner's Ditch Company* v. *Zellerbach*, 37 Cal. 543, is a case in point. There the Court holds that the entire conveyance of all the property of a corporation, which strips it of everything of which it was incorporated to manage, has no effect whatever upon the existence of the corporation; that it does not dissolve it; that the corporation still remains a corporation. There the Court decides that the corporation may still go on in business, if the managers desire to do so. If there was anything in the proposition that the appointment of a Receiver was equivalent to a decree of dissolution by the Court, and if the doctrine is involved in this case, and if that doctrine is involved in the case of *Neall* v. *Hill*, 16 Cal. 145, the doctrine has been overruled by later decisions of this Court. The entire property of a corporation may be taken out of its hands, either by judicial process or by the conveyance of the corporation itself. It may have nothing with which to carry on business, but it still remains a corporation, and dissolution does not follow—one is not the equivalent of the other. The same doctrine is maintained on page 347 of Wait's Actions and Defenses, citing this case in 37 Cal.

So that the appointment of a Receiver is not equivalent to a dissolution. So far as this Court is concerned—so far as the jurisprudence of this State is concerned—that authority is no longer authority here. A corporation created by law has no property, necessarily, as a precedent to incorporation. The property must be acquired. It is the mere authority to exist as a corporation that the law provides for. It acquires its property

afterwards. „ And whatever disposition may be made of the property, whether in the administration by the Court of Equity by the appointment of a Receiver, or otherwise, such action cannot affect the existence of the corporation.

*D. H. Whittemore* and *W. H. L. Barnes*, also for Respondent.

By the Court, WALLACE, C. J.:

It appears by the return to the writ of *certiorari* issued in the cause that, on the 7th of October last, Thomas J. Gallagher, as plaintiff, filed in the office of the Clerk of the District Court of the Fifteenth Judicial District, in the City and County of San Francisco, a complaint (in which complaint the petitioner was the sole defendant) complaining on behalf of himself and of all others, creditors, depositors, and members of " La Société Française d'Epargnes et de Prévoyance Mutuelle " who should thereafter come in and seek relief by, and contribute to, the expenses of the action thereby instituted.

In this complaint it was alleged that the defendant therein is a corporation duly incorporated under the laws of the State of California for the purpose of receiving deposits of money, preserving the same from loss, and finding secure and profitable investments therefor—its principal place of business being at the said City and County of San Francisco. That the said defendant is indebted to the plaintiff in the sum of ninety-eight thousand seven hundred and fifty dollars in gold coin of the United States, for services by the plaintiff theretofore rendered, as the attorney of the defendant, at divers times between the 1st day of June, A. D. 1870, and the 5th day of October, A. D. 1878, in prosecuting and defending certain suits, in drawing and engrossing various instruments of writing at its request, in counselling and advising the defendant, for attendance in and about the business of the defendant, and for money paid, laid out and expended by the plaintiff at the request of the defendant in and about its suits and business ; that payment therefor had been duly demanded of the defendant by the plaintiff; but that the defendant had not paid to the plaintiff the said sum, or any part thereof.

It was further alleged in the complaint that the plaintiff is a depositor and voting member of the said corporation defendant; that the defendant is insolvent; that the Board of Bank Commissioners, proceeding under the Act of the Legislature of this State, approved March 30th, 1878, had examined the affairs of the said corporation defendant, and had reported that it had not sufficient funds to pay its depositors and creditors—there being discovered to be a large deficiency in its assets, and that its liabilities were in excess of its assets some eight hundred thousand dollars and upwards.

It was further set forth in the complaint that under the by-laws of said corporation every depositor having fifty dollars on deposit for six months becomes thereby a voting member of the corporation—has a vote in the election of its officers, and a vote upon any business coming before any meeting of its members; and it is further alleged, in this connection, in the complaint, "that there is great danger that designing and irresponsible men may obtain control of its affairs, and that the assets of said corporation may be squandered to such an extent that it can pay no part of its liabilities." It is further alleged in the complaint that by certain by-laws of the corporation, adopted in the year 1860, it is provided that no voluntary liquidation of its affairs can take place unless desired by a majority of its members representing three-fourths in amount of the deposits; and it is averred that, in point of fact, members representing more than one-half of the deposits are resident beyond the limits of the United States, and principally reside in the Republic of France.

It is further set forth in the complaint that through the improper conduct of a late manager of said corporation, upwards of seven hundred thousand dollars had been paid out to depositors after the said deficiency of eight hundred thousand dollars had occurred.

It is further averred in the complaint that under the existing by-laws of the corporation it is provided that its depositors shall be paid on demand from its first disposable funds, and that such demands are registered and paid pursuant to the order in which they have been presented; that, in point of fact, unpaid de-

mands of this character are now registered upon the books of the corporation to the amount of upwards of nine hundred thousand dollars ; " that there is great danger that unless said corporation and its officers are restrained from paying these amounts, and a Receiver appointed herein, the remaining creditors and depositors will suffer great and irreparable injury, because of said deficiency of eight hundred thousand dollars," and that by reason of the said existing deficiency the depositors who have been paid have in fact been overpaid, and that the holders of the registered demands will, under the operation of the by-laws referred to, also be preferred and overpaid, to the great loss and damage of the creditors, and of those of the unpaid depositors who have not registered their demands for repayment.

The prayer of the complaint is that the plaintiff have judgment against the defendant for the sum of ninety-eight thousand seven hundred and fifty dollars and costs of suit ; that said corporation be declared insolvent, and that an injunction be issued restraining the managers of said corporation, their agents and servants, from paying out the funds thereof, or in any way interfering with the business thereof, and that said corporation be dissolved ; that a Receiver be appointed to take charge of the business of said corporation, to wind up the affairs thereof, to take possession of the books, papers, property, evidences of indebtedness, and all the assets thereof ; to collect all debts due said corporation ; to pay all legal claims against the same ; to employ all needed accountants, clerks, servants, and attorneys, and generally to do all and everything necessary to protect the rights of the creditors and depositors of said corporation, and "for such other and further relief as may be just." Immediately upon filing the complaint the following order was made and entered upon the minutes of the Court:

" On filing the complaint herein, and good cause being shown therefor, it is ordered that Frederick F. Low be and he is hereby appointed Receiver, as prayed for in said complaint, on filing a bond therein in the sum of two hundred and twenty-five thousand dollars.                    SAMUEL H. DWINELLE,

" October 7th, 1878.                    District Judge."

Subsequently, and on the same day, the following order was made by the Judge of the District Court of the Fifteenth Judicial District, and entered upon the minutes of the Court:

" Whereas, an order has been made in the foregoing action, appointing Frederick F. Low Receiver in the foregoing action, as prayed for in the complaint herein, on filing a bond in the sum of two hundred and twenty-five thousand dollars; and whereas, said Frederick F. Low has filed a bond in the said sum of two hundred and twenty-five thousand dollars, with good and sufficient sureties, which bond has been duly approved by me: Now, therefore, it is ordered that said Frederick F. Low be and he is hereby appointed the Receiver to take charge of the affairs of said corporation, to collect all money due the same, to pay all legal claims against said corporation, to take possession of all books, accounts, papers, property, evidence of indebtedness, and all assets thereof, to employ all needed accountants, clerks, servants, and attorneys, and generally to do all and everything necessary to protect the rights of the creditors and depositors of said corporation." '

These orders were made *ex parte*, upon application of the plaintiff, and before the corporation defendant had been summoned to answer the complaint. Subsequently, in the further progress of the cause, the corporation defendant appeared in the action and demurred to the complaint, filed an answer, and made an unsuccessful motion to set aside the order appointing the Receiver; but as, in the view entertained by us, the particular consideration of these proceedings would not aid in the solution of the general question before us, they will not be further noticed.

1. In support of the first point made by the counsel for the respondent, it is assumed by them that the correctness of the orders complained of by the petitioner might be considered here upon appeal from the final judgment, should one be hereafter rendered in the cause, and an appeal taken therefrom to this Court, and it is therefore claimed that they cannot be reviewed here upon this proceeding by *certiorari*.

The statute concerning this writ (sec. 1068) provides that it may be resorted to "when   *   *   there is no appeal," etc. If there be an appeal, the writ of *certiorari* cannot be awarded; but no direct appeal is given by the statute, and we are of opinion that such an order is not subject to be reviewed on an appeal from the judgment under sec. 956 of the Code of Civil Procedure.

2. The case here not being *in error* but upon *certiorari*, the inquiry is of course to be confined to a consideration of the *mere power* of the District Court to *appoint a Receiver* in a case of this impression.

Irrespective of the effect of the fifth subdivision of sec. 564 of the Code of Civil Procedure, which will be presently considered, there is no jurisdiction vested in Courts of Equity to appoint a Receiver of the property of a corporation in a suit prosecuted by a private party. This is only to say that there is no jurisdiction vested in these Courts in such a case to *dissolve* a corporation; for the power of a Receiver, when put in motion, of necessity supersedes the corporate power. It necessarily displaces the corporate management and substitutes its own, and assumes, in the language of the order under review, "to do all and everything necessary (in the judgment of the Receiver, under the advice of the Court) to protect the rights of the creditors and depositors of said corporation."

This precise question was brought directly under consideration here in the case of *Neall* v. *Hill*, 16 Cal. 145, where, in a suit brought by a stockholder, a Receiver had been appointed by the District Court to take possession of the property of the "Gold Hill and Bear River Water Company," a corporation existing under the laws of this State. The opinion in that case, rendered by Mr. Justice COPE, and concurred in by the whole Court, after referring to the adjudicated cases in England and in this country, uses this language: "This decree, if permitted to stand, must necessarily result in the dissolution of the corporation; and in that event the Court will have accomplished, in an indirect mode, that which, in this proceeding, it had no authority to do directly. It is well settled that a Court of Equity, as such, has no jurisdiction over corporate bodies for the pur-

pose of restraining their operations, or winding up their con-
cerns. We do not find that any such power has ever been
exercised in the absence of a statute conferring the jurisdiction."

Of course, it is not to be doubted that the trustees of a cor-
poration, the persons who constitute its direction, and from time
to time exercise the corporate authority in the management of
its affairs, are subject to the control of Courts of Equity, or, as
observed by Chancellor Kent, "that the persons who from time
to time exercise the corporate powers, may, in their character of
trustees, be accountable to this Court [the Court of Chancery]
for a fraudulent breach of trust; and," he adds, "to this plain
and ordinary head of equity the jurisdiction of this Court over
corporations ought to be confined." (*Attorney-General* v. *Utica
Ins. Co.* 2 Johns. Ch. 388.) And in exercise of these admitted
equity powers of the Court, referable to the well-known grounds
upon which its jurisdiction ordinarily proceeds, embracing the
cognizance of fraud, accident, trust, and the like, the rights of
natural persons injured or put at hazard through corporate pro-
ceedings unauthorized by law, will find ample protection and
redress.

But even in such a proceeding as that, the Trustees must of
course be made parties defendant; and it will be observed upon
looking at the complaint of Gallagher in this view that it is not
substantially sufficient in its scope to put the equity powers of
the Court in motion for any purpose. The corporation itself be-
ing the sole party defendant, the Trustees—those persons upon
whom the management of its affairs is devolved—are not parties,
nor is any relief sought against them personally. That there is
no *inherent power* in the District Courts, as being *Courts of
Equity*, to appoint a Receiver in such a case as that presented
by the complaint of Gallagher, is therefore apparent both upon
principle and authority.

3. We proceed, therefore, to inquire whether the jurisdiction
of the Courts of Equity, in the respect referred to, has been
enlarged by any statute of this State. The only statute brought
to our attention, which is supposed to have that effect, is sec.
564 of the Code of Civil Procedure, which is as follows:

"Sec. 564. A Receiver may be appointed by the Court in
which an action is pending, or by the Judge thereof:

"1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.

"2. In an action by a mortgagee for the foreclosure of his mortgage and the sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt.

"3. After judgment, to carry the judgment into effect.

"4. After judgment, to dispose of the property according to the judgment, or to preserve it during the pendency of an appeal, or in proceedings in aid of execution, when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment.

"5. In cases where a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.

"6. In all other cases where Receivers have heretofore been appointed by the usages of Courts of Equity."

That the case brought into the District Court of the Fifteenth Judicial District is not included in the sixth subdivision of this statute has been determined already; and the appointment here not having been made " after judgment," of course the third and fourth subdivisions can have no application. The first and second subdivisions provide for the appointment of a Receiver in an action brought by a vendor to vacate a fraudulent purchase ; in aid of a creditor's bill ; also, in proceedings involving questions between partners ; also, in suits of foreclosure brought by mortgagees when the security is likely to be lost or seriously impaired. These subdivisions do not assume to create a substantive right of action where none existed before. Their aim is to provide a more efficacious remedy in the conduct of actions,

the right to bring which already exists, and are elsewhere pro-
vided for.   The action by a vendor to vacate a fraudulent pur-
chase, or by a mortgagee to foreclose a mortgage, is not created
by the statute we are now considering—they exist independ-
ently of its provisions, and would continue to exist if this stat-
ute were repealed.

The particular subdivision, however, which is supposed to
confer the power in question and to authorize the District Court
to appoint a Receiver of the property of this corporation, is the
fifth—being the only portion of the statute in which corpora-
tions are named—" A Receiver may be appointed   *   *   *   *
in the cases when a corporation   *   *   *   *   is insolvent."
There is, of course, no such thing as an action brought distinct-
ively for the mere appointment of a Receiver—such an appoint-
ment, when made, is ancillary to or in aid of the action brought.
Its purpose is to preserve the property pending the litigation so
that the relief awarded by the judgment, if any, may be effect-
ive.   The authority conferred upon the Court to make the ap-
pointment necessarily pre-supposes that an action is pending be-
fore it, instituted by some one authorized by law to commence
it.   But there is no statute of this State, none to which we have
been pointed, which undertakes to confer upon a private person,
either as stockholder or creditor, the right to maintain an action
to dissolve a corporation upon the ground that it is insolvent, or
to obtain relief by seizing its property out of the hands of its
constituted management, and placing it in the hands of a Re-
ceiver.

The statute of this State (sec. 564) is copied from the Code
of Procedure of the State of New York, (sec. 244) the fifth
subdivision of ours corresponding in part with the fourth sub-
division of theirs.   But the fourth subdivision of their statute
provides : " A Receiver may be appointed   *   *   *   *   *
(4) *In the cases provided in this Code* and by special statutes,
when a corporation has been dissolved, or is insolvent," etc.
The words in *italics* are omitted from subd. 5 of our Code of
Civil Procedure.   There were no such cases provided.

The difference between the two statutes is very material, and
involves the precise point which we have been considering, in

reference to the construction to be placed upon our statute; for the statutes of the State of New York contained independent provisions to the effect that a Receiver of the property of a corporation might be appointed *upon a petition of the execution plaintiff*, when an execution issued upon a judgment rendered against the corporation had been returned unsatisfied in whole or in part; that a corporation should be adjudged to be dissolved when it had remained insolvent for one whole year, or for that length of time had neglected or refused to pay its notes or other evidences of debt, or had for one year suspended its ordinary business. These statutes, independently of the section of its Code of Procedure from which subd. 5 of sec. 564 of our Code of Civil Procedure was extracted, created rights of action in favor of private persons, and correspondingly enlarged the powers of the Courts of Equity by directly and in terms authorizing them in such cases to appoint Receivers of the property of corporations, upon application made to them by creditors, stockholders, and other private parties instituting proceedings for that purpose.

We are, therefore, of opinion that the said orders of October 7th, 1878, assuming to appoint a Receiver in the case of Thomas J. Gallagher *v.* La Société Française d'Epargnes et de Prévoyance Mutuelle, were in excess of the jurisdiction of the District Court, and that they be annulled. So ordered.

Mr. Justice MCKINSTRY expressed no opinion.